In re Gerald S. MICKLE, Jr., Debtor.

Gerald S. MICKLE, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 94–12519–8G7.
Adv. No. 95–158.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 24, 1997.

William F. Lawless, Altamonte Springs, FL, for plaintiff.

Mary Apostolakos Hervey, Washington, DC, for defendant.

## ORDER ON MOTION BY THE UNITED STATES FOR SUMMARY JUDGMENT

PAUL M. GLENN, Bankruptcy Judge.

THIS CASE came before the Court to consider the Motion for Summary Judgment filed by the United States of America (the United States). In its Motion, the United States requests that this Court grant summary judgment in its favor with respect to a Complaint to Determine Dischargeability Pursuant to 11 U.S.C. Section 523 (the Complaint) filed by the Debtor, Gerald S. Mickle, Jr.

The Complaint relates to tax liabilities owed by the Debtor to the United States for the tax years ending on December 31, 1979, 1981, and 1989. In Count I of the Complaint, the Debtor seeks a determination that these tax liabilities are dischargeable under Section 727 of the Bankruptcy Code. In Count II of the Complaint, the Debtor seeks a determination that prepetition tax liens filed by the Internal Revenue Service are enforceable only with respect to property owned by the Debtor at the time he filed his Chapter 7 petition, but that they are not enforceable as to any property acquired by the Debtor subsequent to the filing of the petition.

With respect to Count I, the Debtor had asserted that the taxes are "stale" and therefore dischargeable pursuant to § 727 because they do not meet the requirements for nondischargeability set forth in § 523(a)(1)(A) and § 523(a)(1)(B)(ii) of the Bankruptcy Code. On April 15, 1996, this Court entered an order on the Debtor's motion for summary judgment which determined that the tax liabilities are not excepted from discharge under § 523(a)(1)(A) or § 523(a)(1)(B)(ii).

The United States, however, asserts that the liabilities are excepted from discharge pursuant to a separate subsection, Section 523(a)(1)(C) of the Bankruptcy Code, because the Debtor made fraudulent returns or willfully attempted to evade or defeat the taxes. The United States contends that the Debtor's tax liabilities arise from the disallowance of certain losses incurred by him in investments in contracts sold by an entity known as First Western Government Securities, Inc. (First Western). The United States also contends that the United States Tax Court previously has found that the investments offered by First Western had no profit objective, but were instead designed for the sole purpose of avoiding taxes. The United States claims that the doctrine of collateral estoppel precludes the Debtor from challenging the determination of the Tax Court, and that this Court therefore is bound to find that the Debtor's investments in First Western were entered for tax avoidance purposes.

The Motion for Summary Judgment filed by the United States is directed solely to the issues arising under § 523(a)(1)(C) concerning whether the Debtor made fraudulent returns or willfully attempted to evade or defeat the taxes.

At the hearing on the Motion, the United States advised the Court that it would proceed only with respect to the dischargeability of the tax liabilities for 1979 and 1981, and that it would not pursue a determination of nondischargeability with respect to the taxes due for 1989. The United States also asserted that the disposition of the Debtor's claim in Count II of the complaint for a declaratory judgment may be premature pending resolution of the dischargeability issues, although the United States reasserted its challenge to this Court's jurisdiction on this Count based on the Declaratory Judgment Act.

### Background

The Debtor's involvement with First Western extended from 1979 until 1981. (Deposition of Gerald Mickle, p. 13). The first contact with First Western apparently was initiated by the Debtor's investment advisor, Robert Schmidt. (Deposition, pp. 8–9). The Debtor understood that the investments would involve forward contracts, "in which a small amount of money could control a larger return." (Deposition, p. 26). The Debtor's expectation was "to make money,"

and he hoped to "come out on the positive side" after some early losses. (Deposition, pp. 10, 41).

The Debtor placed approximately $1,465,-000 with Mr. Schmidt to invest in First Western. (Deposition, pp. 56–57, 80–81). Each time an investment was to be made, the Debtor would receive an Interest Rate Forecast sheet, which he would complete and return to First Western. (Deposition, p. 27). The Debtor understood that First Western would then "make a government contract" for him, or buy or sell something for him based on the completed Forecast sheet, although he was not knowledgable with respect to First Western's process other than that it involved a computer program. (Deposition, p. 29). He would then receive back a "ticket" reflecting the action taken on a particular government security. (Deposition, p. 30).

The Debtor filed a tax return for 1979. Schedule D of the tax return, regarding capital gains and losses, reflects total losses for that year in the amount of $3,024,010, and total gains in the amount of $127,424. The entire amount of the loss was attributed to the purchase and sale of GNMA securities. A Supplemental Schedule of Gains and Losses reflects a net loss of $123,814 arising from GNMA and FMAC forward contracts that were cancelled. The total income reported on line 22 of the return amounted to $1,972.

The Debtor also filed a tax return for 1981. The Supplemental Schedule of Gains and Losses filed with the return for that year reflects a total loss in the amount of $145,841 arising from the purchase and sale, or cancellation, of GNMA future contracts. This loss was entered on line 14 of the return, and the total income reported on line 22 of the return amounted to $1,301.

The returns were prepared by Lloyd Ritter, a certified public accountant. (Deposition, p. 87).

The Debtor did not have any further transactions with First Western after 1981. (Deposition, p. 68).

The Internal Revenue Service subsequently disallowed the losses arising from the First Western investments as claimed on the Debtor's tax returns. The Service issued a Statutory Notice of Deficiency on August 10, 1984, and determined that deficiencies in income taxes existed for 1979, 1980, and 1981, and further determined that negligence penalties should be imposed for those years. (Affidavit of Kenneth B. Wheeler, para. 6). The Debtor pursued his statutory remedies and filed a Petition in the United States Tax Court for a redetermination of the proposed deficiencies and penalties. On August 14, 1990, the Tax Court entered a decision "pursuant to agreement of the parties" and determined that certain deficiencies in income taxes, together with certain additions to taxes, were due from the Debtor for 1979, 1980, and 1981. This decision does not contain any findings that the Debtor engaged in any fraudulent conduct, and does not impose any civil penalties on the Debtor for fraud.

On October 1, 1990, a tax liability was assessed against the Debtor for the 1979 tax year. As of December 26, 1990, the amount of this tax was $1,786,044.14. Also on October 1, 1990, a tax liability was assessed against the Debtor for the 1981 tax year. As of December 26, 1990, the amount of this tax was $145,246.25.

### Freytag v. Commissioner

The United States asserts that it is entitled to summary judgment because the doctrine of collateral estoppel precludes the Debtor from challenging certain determinations of the United States Tax Court contained in the case styled *Freytag v. Commissioner*, 89 T.C. 849, 1987 WL 45307 (1987). According to the United States, the Court in *Freytag* found that the investments offered by First Western had no profit motive and were designed solely as mechanisms to avoid taxes. Since the Debtor's tax liabilities stem from investments in First Western, the United States contends that the Debtor's tax returns for 1979 and 1981 necessarily were filed fraudulently or with the intent to evade or defeat his federal tax liabilities.

First, it is significant that *Freytag* was a "test case."

There are currently more than 3,000 cases in this Court that involve the issues presented in these cases. The common denominator of all the cases is that each

petitioner entered into alleged financial transactions involving forward contracts for Government mortgage-backed securities with First Western Government Securities (First Western). These cases were selected as so-called test cases.

*Freytag,* 89 T.C. at 849. It is equally significant that the Tax Court expressly acknowledged that the investors selected for the test case are not necessarily representative of other investors in First Western.

> [W]hile the transactions of the test case petitioners with First Western may be typical, the individual petitioners are not typical because of the non-random selection process of the test cases. Petitioners chose five cases, and respondent chose five cases. Understandably, both sides chose cases that were more favorable to their respective views of the First Western transactions.

*Id.* at 860. The test case petitioners are listed in an appendix and discussed in the text of the decision. The Debtor is not a test case petitioner.

The Tax Court in *Freytag* reached three separate Ultimate Conclusions of Fact.

> (1) The transactions between First Western and its customers were illusory and fictitious and not bona fide transactions.

> (2) Even if the transactions were bona fide transactions, the transactions were entered into primarily, if not solely, for tax-avoidance purposes.

> (3) Petitioners claiming deductions based on these transactions are liable for additions to tax under section 6653(a).

*Id.* at 875–76. With respect to the last ultimate conclusion of fact, the Tax Court referred specifically to Section 6653(a) of the Internal Revenue Code as follows:

> Section 6653(a) provides that if any part of an underpayment "is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment." Petitioners have the burden of proving that their actions in claiming these losses were not negligent. *Forseth v. Commissioner,*

85 T.C. [127] at 166 [1985 WL 15375 (1985) ].

> "Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances."

*Freytag,* 89 T.C. at 887. Consequently, the Tax Court addressed only the penalties for negligence under Section 6653(a) of the Internal Revenue Code. A separate provision providing civil penalties for fraud under Section 6653(b) was not addressed.

## § 523(a)(1)(C)

■ The United States claims that the Debtor's tax liabilities for 1979 and 1981 are not dischargeable pursuant to Section 523(a)(1)(C) of the Bankruptcy Code. Section 523(a)(1)(C) provides:

> § 523. Exceptions to Discharge

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (1) for a tax or a customs duty—

> .     .     .     .     .

> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

A debtor's mere failure to pay his taxes, without additional circumstances, does not cause the debt to be nondischargeable under Section 523(a)(1)(C). *In re Haas,* 48 F.3d 1153, 1158 (11th Cir.1995). The District Court for the Middle District of Florida relied on *Haas* in *In re Williams,* 186 B.R. 521 (M.D.Fla.1995) to evaluate a factual situation similar to the present case. In *Williams,* the debtors had filed tax returns for the years in question and had claimed deductions for investments in tax shelters. The deductions were subsequently disallowed, and the Internal Revenue Service assessed additional taxes against the debtors. The debtors filed a complaint to determine that the taxes were dischargeable, and the Government replied that the taxes were nondischargeable under Section 523(a)(1)(C). The District Court cited *Haas* in concluding that the debtors' use of assets to pay debts other than taxes does

not constitute a "willful evasion" within the meaning of Section 523(a)(1)(C), even if the debtor is aware that the taxes are due. *In re Williams,* 186 B.R. at 522.

Several courts have held that a three-pronged test should be applied to determine whether a debtor has willfully attempted to evade or defeat a tax. In the case of a debtor who is financially able to pay the taxes, the test is whether (1) the debtor had a duty under the law to pay the taxes; (2) the debtor knew he had that duty; and (3) the debtor voluntarily and intentionally violated the duty. *In re Bruner,* 55 F.3d 195, 197 (5th Cir.1995); *In re Semo,* 188 B.R. 359, 362 (Bankr.W.D.Penn.1995). In those cases in which the debtor's conduct was found to be "willful" under this three-pronged test, the courts generally have found a pattern of failure to file returns, coupled with conduct aimed at concealing income and assets. *In re Bruner,* 55 F.3d at 200.

■ Two alternative bases for nondischargeability are set forth in Section 523(a)(1)(C). To prove its case, the government must establish either that the debtor filed a "fraudulent" return, or that the debtor "willfully" attempted to evade or defeat the tax. In either case, the government must prove that the underpayment of taxes was "deliberate" or "committed with fraudulent intent." 4 Collier on Bankruptcy, ¶ 523.07[4] (1996). "To prove fraud the Government must show that the taxpayer acted with specific intent to evade a tax believed to be owing." *In re Williams,* 164 B.R. 352, 354 (Bankr.M.D.Fla.1994), *aff'd* 186 B.R. 521 (M.D.Fla.1995). Consequently, a significant aspect of § 523(a)(1)(C) is the subjective intent or state of mind of the particular debtor involved in the case.

## Discussion

■ The United States claims that the Tax Court's decision in *Freytag* collaterally estops the Debtor from litigating the issues arising under Section 523(a)(1)(C). Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112

L.Ed.2d 755 (1991); *In re St. Laurent,* 991 F.2d 672 (11th Cir.1993).

Three elements must be present for issue preclusion to be proper:

(1) the issue at stake must be identical to the one involved in the prior litigation;

(2) the issue must have been actually litigated in the prior litigation; and

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

*In re Halpern,* 810 F.2d 1061, 1064 (11th Cir.1987), citing *In re Held,* 734 F.2d 628, 629 (11th Cir.1984).

In this case, the Tax Court in *Freytag* framed the three issues for determination as: "(1) Whether these transactions should be recognized for Federal income tax purposes, (2) if so, whether they were entered into for profit under the standard set forth in section 108 of the Tax Reform Act of 1984, as amended, and (3) whether certain petitioners are liable for additions to tax for negligence." *Freytag,* 89 T.C. at 850.

■ The Debtor was not a "test case" petitioner in *Freytag,* and did not participate in the *Freytag* litigation. The Court discussed in detail the backgrounds, levels of sophistication, and conduct of the specific test case petitioners in analyzing their motive for making the investments and the degree of care exercised by each of them. The background, sophistication, and conduct of the Debtor, of course, were not considered. Further, as set forth above, the Court in *Freytag* expressly acknowledged that the test case petitioners were not representative of the entire group of investors due to the process by which they were selected.

Additionally, the Tax Court found only that the test case petitioners had not exercised an appropriate level of care, or were negligent, in investigating the transactions prior to making their investments, and that the petitioners were liable for additions to tax under Section 6653(a) of the Internal Revenue Code. As set forth above, Section 6653(a) provides for an addition to tax if an underpayment is due to negligence. The Court did not address Section 6653(b) of the Internal

Revenue Code, which consists of a separate provision for an addition to tax if an underpayment is due to the fraud of the taxpayer.

Under these circumstances, the Court concludes that issues of fact exist with respect to material elements of a cause of action under Section 523(a)(1)(C) of the Bankruptcy Code. The Tax Court's decision in *Freytag* does not establish that the Debtor in this case acted fraudulently in filing his returns for 1979 and 1981, or that he willfully attempted to evade or defeat any tax. Regardless of the Tax Court's ultimate conclusion as to the design or structure of the First Western investments in general, the Tax Court made no finding as to the subjective intent or state of mind of this particular Debtor in entering the First Western transactions. Such intent or willfullness is a necessary element under Section 523(a)(1)(C). The issues decided by the Tax Court are not dispositive of a cause of action under Section 523(a)(1)(C), and this Debtor was not a party to, and did not participate in the litigation of, the *Freytag* case. The doctrine of collateral estoppel does not apply to preclude the litigation of the United States' claim under Section 523(a)(1)(C).

Accordingly:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the United States of America is denied.

BY THE COURT.