United States Court of Appeals,

Fifth Circuit.

No. 94-40586.

In the Matter of James Russell BRUNER and Judith Ann Jones Bruner, Debtors.

James Russell BRUNER and Judith Ann Jones Bruner, Appellants,

v.

UNITED STATES of America, Appellee.

June 21, 1995.

Appeal from United States District Court for the Western District of Louisiana.

Before JONES, DUHÉ and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This bankruptcy case involves the single issue of whether the debtors' tax liabilities should be excepted from discharge due to their pattern of failing to file returns, failing to pay taxes, and attempting to hide income and assets. Because we conclude that the debtors' conduct constituted a willful attempt to evade or defeat their tax liabilities, we affirm both the bankruptcy court and the district court's determination that the tax debts should not be dischargeable in bankruptcy.

*FACTS*

Debtors James and Judith Bruner resided in Louisiana, a community property state, at all times relevant herein. James Bruner is a surgeon. For the 1980 tax year, Dr. and Mrs. Bruner filed a joint federal income tax return evidencing professional income of $243,457, a farm loss of $21,239, and a charitable deduction of $10,000 to "Three-L Ministries." The Bruners paid $30,766 in federal income taxes for 1980.

Perhaps the sting of paying federal income taxes proved more than the Bruners could bear: they did not file a tax return again for the next eight years, nor did they pay any taxes. The Bruners' failure to check in with the government every April 15th did not go unnoticed by the Internal Revenue Service. After the Bruners failed to file returns in 1981, 1982, and 1983, the Service began an investigation. The investigation revealed that the Bruners had made substantial cash expenditures

during the period in question, and that substantial funds were deposited into both the Bruners' bank accounts and those of "Three-L Ministries." These transactions would indicate, *inter alia,* substantial income being earned by the Bruners, and yet the Bruners had not reported any income to the government for these years, nor had they paid any taxes.

In 1988, Dr. Bruner was indicted under 26 U.S.C. § 7203 on three counts of willfully failing to file federal income tax returns for 1981, 1982, and 1983. He pled guilty to one count of willfully failing to file his 1981 tax return. The district court ordered, *inter alia,* that Dr. Bruner pay a $10,000 fine, pay back taxes, penalties, and interest for the 1981 tax year, and file back income tax returns for 1981, 1982, 1983, 1984, 1985, 1986, 1987, and 1988.

The Service tried to reconstruct the Bruners' income and prepared substitute returns for them for the 1981 through 1983 tax years, reflecting income in excess of $100,000 for each of those years. The Bruners executed a Form 870 whereby they accepted the income tax liability determinations stated on the substitute returns prepared by the IRS. The Bruners filed their own returns for the years 1984 through 1988. Based on the returns filed, the Service issued tax assessments against the Bruners totalling over $290,000 for tax years 1981 through 1988. For tax years 1981 through 1983, tax assessments were made against Dr. and Mrs. Bruner separately, while the assessments were made against them jointly for 1984 through 1988.[1] In addition to the tax assessment, hefty penalties and interest were also levied against the Bruners. Between 1989 and 1993, they made substantial payments on their tax debts; however, because of the overwhelming amount due, vast sums still remained unpaid.

James and Judith Bruner filed a Chapter 7 bankruptcy petition on April 21, 1993. Two days later, they filed an adversary proceeding against the United States seeking a determination of the

---

[1]The substitute returns prepared by the Service for years 1981 through 1983, which the Bruners accepted via Form 870, reflected a filing status of "married filing separately." Thus, income and assessments for these years applied to Dr. and Mrs. Bruner separately. For tax years 1984 through 1988, the Bruners filed jointly. Likewise, income and assessments for those years applied to Dr. and Mrs. Bruner jointly.

dischargeability of their federal income tax liabilities for 1981, 1983, 1986, 1987, and 1988.[2] The Bruners also filed a motion for summary judgment, contending that no statutory exception to discharge would be applicable so as to preserve the tax liabilities in question. The IRS filed a proof of claim in the bankruptcy action, asserting an outstanding tax liability of over $365,000.

The bankruptcy court conducted a trial on the dischargeability issue. The court held, *inter alia,* that the Bruners' tax liabilities for 1981, 1983, 1986, 1987, and 1988 were excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C) because the Bruners had willfully attempted to evade or defeat their taxes for those years.[3] The district court affirmed the bankruptcy court's determination. The Bruners have appealed to this court.

*Standard of Review*

We review questions of statutory interpretation de novo. *Penn v. Howe-Baker Engineers, Inc.,* 898 F.2d 1096, 1101 (5th Cir.1990). Thus, we review de novo the district court's interpretation of the Bankruptcy Code. *See Matter of Texas Research, Inc.,* 862 F.2d 1161, 1163 (5th Cir.1989). We review the bankruptcy court's factual determinations, in which the district court concurred, under the "clearly erroneous" standard. *See Matter of Webb,* 954 F.2d 1102, 1103-1104 (5th Cir.1992).

*DISCUSSION*

When a Chapter 7 debtor obtains bankruptcy relief, the general rule is that all debts arising prior to the filing of the bankruptcy petition will be discharged. *See* 11 U.S.C. § 727(b). However, Congress has excepted certain liabilities from discharge. For example, § 523 of the Bankruptcy Code enumerates several situations in which tax liabilities are not dischargeable in bankruptcy. The pertinent statutory provision relevant to this dispute is 11 U.S.C. § 523(a)(1)(C). It provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

---

[2]Dr. Bruner had already paid his taxes for 1981. It is unclear whether Mrs. Bruner's tax liability for 1981 has been paid, although the briefs indicate that the tax liability for the year 1981 is no longer at issue. The Bruners' tax liabilities for the other years (1982, 1984, 1985, 1989, 1990, and 1991) either have been paid in full or are not at issue here.

[3]The court found that the penalties for these years were dischargeable, pursuant to 11 U.S.C. § 523(a)(7).

> (1) for a tax or a customs duty—

>> (C) with respect to which the debtor made a fraudulent return or *willfully attempted in any manner to evade or defeat such tax.*

11 U.S.C. § 523(a)(1)(C) (emphasis added).

The sole issue in this case is whether the district court correctly affirmed the bankruptcy court's conclusion that the Bruners "willfully attempted" to evade or defeat their taxes, such that their tax liabilities are excepted from discharge. The parties agree that the government bore the burden of proof on this issue. In concluding that the Bruners' tax liabilities for 1983, 1986, 1987, and 1988 were excepted from discharge under § 523(a)(1)(C), the bankruptcy judge employed a three-prong test to determine whether the debtors had "willfully attempted in any manner to evade or defeat" their tax liabilities. The court concluded that the proper test is whether, in the case of a debtor who is financially able to pay his taxes but chooses not to do so, (1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty.[4]

After considering the evidence and arguments presented by both parties, the bankruptcy judge held that, under the three-part test, the Bruners' tax liabilities for the years in question were not dischargeable in bankruptcy. He found that the Bruners had earned substantial income during the years in question, as evidenced by their deposits and cash expenditures, and therefore had the financial ability to pay their taxes.[5] He also noted that the evidence established that the Bruners both knew

---

[4]This three-prong test for civil willfulness has been enunciated by other courts to consider the issue, including *In re Haas,* 173 B.R. 756 (S.D.Ala.1993), *reversed,* 48 F.3d 1153 (11th Cir.1995), and *U.S. v. Toti,* 149 B.R. 829 (Bankr.E.D.Mich.1993), *affirmed,* 24 F.3d 806 (6th Cir.1994).

[5]In brief, the Bruners contend that the bankruptcy judge's factual finding in this regard is clearly erroneous because the judge erroneously stated in passing that their tax returns for the years 1980 through 1992 were in evidence, and that he could rely upon the returns to establish that the Bruners had sufficient income with which to pay their taxes, when in fact returns for all years were not in evidence. While the Bruners are correct that returns for *all* years were not introduced into evidence, their argument that the government did not establish their financial ability to pay their taxes borders on specious. The evidence as a whole clearly supports the bankruptcy court and the district court's conclusion that the Bruners had the financial resources to pay their taxes. Dr. Bruner is a highly-compensated surgeon who earned almost a quarter of a million dollars in 1980. His reconstructed income during the subsequent years in question was over $100,000 each year, and these figures are undeniably low-ball amounts based solely upon the money the Service could trace and allocate to the Bruners.

they had a duty to file tax returns and to pay taxes, as evidenced by their filing a joint return in 1980, as well as by their subsequent compliance with the district court's order that they file tax returns for later years.[6]

As to the third prong of the test, the bankruptcy judge carefully considered the relevant cases which have construed the willfulness aspect of § 523(a)(1)(C) (discussed below) and concluded that the Bruners did indeed "willfully attempt [ ] to evade or defeat" their tax liabilities. In particular, the bankruptcy court noted that, not only did the Bruners fail to pay their taxes, they also engaged in a pattern of failing to report their income and file returns. Thus, their conduct indicated they were willfully attempting to evade or defeat the assessment of taxes against them. Moreover, the bankruptcy court also concluded that the Bruners had conceded that Three-L Ministries was a shell entity for hiding income and assets, because they agreed to accept the returns filed for them by the Service for 1981 through 1983, in which income passing through Three-L was imputed to them. The bankruptcy judge also referred to the numerous cash transactions in which the Bruners had engaged, implicitly indicating that these cash transactions constituted attempts to hide income and assets.

The district court reviewed the bankruptcy court's interpretation of § 523(a)(1)(C) de novo, and reviewed its findings of fact for clear error. The district court affirmed the bankruptcy court in all respects and concurred in the bankruptcy court's factual finding. The district court noted the application of the three-prong test and rejected the Bruners' contention that proof of an affirmative act is required in order to find that a debtor "willfully attempted" to evade or defeat a tax. The court noted in its Memorandum Ruling that the purpose of § 523(a)(1)(C) is to prevent the use of the Bankruptcy Code as part of a dishonest scheme to avoid liability, while at the same time providing relief to the *honest* debtor. Because the Bruners failed to file tax returns and pay their income tax liability when financially able to do so, the district court concluded that the Bruners did not qualify as the sort of "honest debtor" the Code was designed to protect.

On appeal, the Bruners forward essentially the same arguments as presented below. They

---

[6]The first prong of the test, i.e., whether the debtors had a duty to file tax returns and pay taxes, is undisputed.

contend that the bankruptcy court erred in employing the three-part test forwarded in *Toti* and other cases. They assert that this court instead should follow *In re Gathwright,* 102 B.R. 211 (Bankr.D.Or.1989), and require proof of an "affirmative act" on the part of debtors to evade or defeat their taxes. Because the Bruners contend that they committed no affirmative act, they urge that, under *Gathwright,* their tax liabilities should be discharged. They also argue that if mere non-payment is construed to constitute willful evasion under § 523(a)(1)(C), then all tax debts will be non-dischargeable. Thus, proof of some affirmative act should be required.

The Bruners also contend that, even if we affirm the lower courts' application of the three-part test, the findings of the bankruptcy court were clearly erroneous. They assert that the government failed in its burden of proof because it presented no evidence that Judith Bruner earned any income during this time, nor did the government adduce any evidence that she had knowledge of Dr. Bruner's income and expenses and could have filed a return herself. Thus, they seemingly urge that at least half of the couple's tax liabilities should be subject to discharge because of the government's failure to prove willfulness on the part of Judith Bruner. They also contend that the government failed to present evidence that their failure to file returns and pay taxes was intentional.

We have carefully considered the arguments forwarded by the Bruners. However, we are not persuaded that any relief should be granted. Because we can deal with the Bruners' alternative arguments swiftly, we will address them first before turning to their argument regarding the proper interpretation of § 523(a)(1)(C).

We reject out-of-hand the Bruners' argument that the government produced no evidence that Judith Bruner earned any income or had the ability to file a tax return. Under Louisiana law, a spouse owns a present one-half undivided interest in the income of the other spouse. *See* La.Civ.C. arts. 2336 and 2338. Thus, even though Judith Bruner may not have had a job, half of her husband's income is imputed to her and is taxable to her, and she has a duty to file a tax return reflecting that income. She did not do this, and she obviously was aware of her duty in this regard, as evidenced by the fact that she signed her 1980 return along with her husband.

We likewise reject the Bruners' argument that the government failed to prove that their failure

to pay their taxes was intentional. The Bruners filed a tax return in 1980. They obviously knew they had a duty to file a return and pay their taxes. The evidence is sufficient to establish that the Bruners' failure to fulfill this duty was intentional.

Next we will address the Bruners' argument that *In re Gathwright, supra,* should apply such that we should require proof of an affirmative act on the part of debtors to evade or defeat the imposition of the tax against them. *Gathwright* is the Bruners' sole support for this proposition. We note at the outset that *Gathwright* has been rejected by the majority of courts to address the issue. *See, e.g., In re Griffith,* 161 B.R. 727, 732 (Bankr.S.D.Fla.1993); *In re Jones,* 116 B.R. 810, 815 (Bankr.D.Kansas 1990); *In re Berzon,* 145 B.R. 247, 250 (Bankr.N.D.Ill.1992).

Because of the dearth of Fifth Circuit or Supreme Court cases on the interpretation of § 523(a)(1)(C) in this regard, for instruction we must look to the other circuit courts which have addressed the "willfulness" issue under § 523(a)(1)(C).

The Sixth Circuit, in *In re Toti, supra,* 24 F.3d at 809, held that § 523(a)(1)(C) includes acts of commission and acts of *omission.* In *Toti,* the debtor had failed to file tax returns or pay taxes from 1974 to 1981, although he knew he had a duty and had the ability to do so. He was subsequently indicted on three counts of willful failure to file. He pled guilty to one count, and the other two counts were dropped. As part of his sentence, Toti agreed to file his delinquent returns and to pay some of his tax liability. He later stopped making payments as agreed upon, due to financial problems. When he later filed for bankruptcy, Toti sought discharge of his tax liability and forwarded the same argument that the Bruners assert here, i.e., that proof of an affirmative act is required. The Sixth Circuit rejected Toti's argument, noting that a plain reading of § 523(a)(1)(C) includes both acts of commission and omission. 24 F.3d at 809. The Court held that Toti's tax debts were excepted from discharge because Toti did not fall within the category of "honest debtors" the Bankruptcy Code was designed to protect. He had the wherewithal to file his return and pay his taxes, but he voluntarily, consciously, and intentionally did not fulfill his obligation.

Our colleagues of the Eleventh Circuit were presented with a slightly different scenario in *In re Haas, supra.* The taxpayer/debtor in *Haas* had accurately reported his income and had timely filed

his tax returns but had not paid his taxes, choosing instead to apply his funds to his other liabilities. The Eleventh Circuit rejected *Toti* and held that the language of § 523(a)(1)(C) ought to be construed consistently with the criminal provisions of the Internal Revenue Code. 48 F.3d at 1155-57. In the Internal Revenue Code, heavier criminal liability is imposed for willfully attempting to evade or defeat a tax than for simply not paying it. The Eleventh Circuit reasoned that § 523(a)(1)(C) should follow the usage of the Internal Revenue Code. Moreover, the court noted that if "mere" non-payment of taxes is sufficient to render them non-dischargeable under § 523(a)(1)(C), then, as a practical matter, tax debts will *always* be non-dischargeable in bankruptcy, because the existence of an unpaid tax debt is the necessary prerequisite for the dischargeability issue to arise in a bankruptcy case. Otherwise, the court noted, discharge of tax liabilities will only be available "to those very few debtors who discovered their debts to the IRS in the course of their bankruptcy proceedings." *Haas,* 48 F.3d at 1155.

The Court also noted that, if mere non-payment would render a tax debt excepted from discharge, this would contravene the purpose of the Bankruptcy Code, which is to allow a fresh start for the *honest* but unfortunate debtor. *See Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). The Eleventh Circuit noted that Haas did nothing dishonest in failing to pay his taxes. Rather, his failure to pay was the result of "the defining characteristic of all debtors—honest and dishonest, alike—insufficient resources to honor all of [his] obligations." *Haas,* 48 F.3d at 1156. He used his limited funds to satisfy obligations other than his *properly acknowledged* income taxes. Thus, the court allowed Haas' tax liabilities to be discharged in bankruptcy because, in its view, to do otherwise would "render the general rule of dischargeability of tax liabilities an empty letter and defeat the central purpose of the Bankruptcy Code." *Id.*

We disagree with our colleagues of the Eleventh's Circuit in this regard. We are not convinced that the language of the Internal Revenue Code must be interpreted the same as that of the Bankruptcy Code. Both are very complex regulatory schemes with careful balances of different and competing policies. Because of these differences, the fact that a person would not be a felon for simple non-payment of tax under the Internal Revenue Code does not persuade us that when a person

"willfully attempts to evade or defeat" a tax by non-payment, it must be dischargeable in bankruptcy.

Having carefully considered both *Toti* and *Haas,* we conclude that *Toti* expresses the preferable view. Section 523(a)(1)(C) surely encompasses both acts of commission as well as culpable *omissions.* The language of the statute itself reveals that a willful attempt "in any manner" to evade or defeat a tax precludes discharge. Moreover, we conclude that the Bruners' activities were more akin to those of *Toti* than those of *Haas.* Toti, like the Bruners, had failed to file tax returns or pay taxes for eight years in a row. He only filed his returns when the threat of criminal sanctions became a reality, and even then he did not pay his entire tax obligation. In *Haas,* the debtor had honestly and diligently filed his tax returns, but had used his income to pay his personal and business debts rather than his tax liability. Thus, *Haas* involved a *properly acknowledged* tax liability which the debtor simply did not pay. By contrast, the Bruners were involved in much more flagrant conduct aimed at avoiding even the *imposition* of a tax assessment against them. They were engaged in a pattern of failing to report income, failing to file tax returns, and failing to pay taxes. Moreover, they apparently conducted an inordinate number of cash transactions and even created a shell entity designed to conceal their income and assets. The Bruners were engaged in both acts of omission and acts of commission, all designed to willfully evade the imposition of taxes against them. This is not a case of "mere" non-payment like that in *Haas.* Thus, we need not squarely resolve the "affirmative act" argument forwarded by the Bruners, because the Bruners did engage in affirmative acts designed to evade their tax liabilities.

A pattern of non-payment such as is present here, particularly when accompanied by a pattern of failure to file returns and coupled with conduct obviously aimed at concealing income and assets, certainly constitutes a willful attempt to evade or defeat taxes for purposes of § 523(a)(1)(C). Undoubtedly, the Bruners do not qualify as the sort of "honest debtor" the Bankruptcy Code is designed to protect.

*CONCLUSION*

For the foregoing reasons, we AFFIRM.