**Samuel H. RANGE and Connie C. Range, Appellants,**

v.

**UNITED STATES of America (Internal Revenue Service), Appellee.**

No. Civ.A. H–98–1855.

United States District Court, S.D. Texas, Houston Division.

March 29, 1999.

---

## ORDER

GILMORE, District Judge.

Pending before the Court is Appellants Samuel and Connie Ranges' ("Ranges") Appeal of the Bankruptcy Court's Decision (Bankr.No. 92–47702, Instrument No. 72). Having reviewed the submissions of the parties and the applicable law, the Court has determined that the bankruptcy court's decision should be **AFFIRMED** in part, and **VACATED** and **REMANDED** in part.

### I.

Samuel H. Range ("Mr. Range") was granted a discharge in bankruptcy under 11 U.S.C. § 727 on December 28, 1992. (Bankruptcy Court's Findings of Fact and Conclusions of Law, R. Item No. 18, at 9) ("FOF/COL"). On May 11, 1995, the Internal Revenue Service ("IRS") assessed penalties against Mr. Range for fraud for the 1983–1985 tax years, and assessed penalties against Mr. Range and his wife, Connie C. Range ("Mrs. Range") for fraud for the 1986 tax year. (Brief for Appellee, Instrument No. 5, at 12). On July 11, 1995, Mr. Range filed an adversary proceeding in bankruptcy court for a determination of whether his tax liability and assessed penalties were discharged, and requested preliminary and permanent injunctions preventing the IRS from assessing and/or collecting discharged taxes, penalties and interest. (Brief for Appellants, Instrument No. 4, at 4). On August 8, 1995, in response to the application for a preliminary injunction, the bankruptcy court entered an agreed order in which the IRS agreed to withdraw the notices of deficiency it issued on May 11, 1995 to Mr. and Mrs. Range.[1] The IRS also agreed

---

1. The Bankruptcy Code excepts certain debts of an individual debtor from discharge, applying separate standards to income tax obligations on the one hand, and to the *penalties*

not to take action to assess and/or collect taxes, interest, or penalties while the adversary proceeding was pending. (Agreed Order, R. Item. No. 3; FOF/COL, R. Item No. 18, at 10). As a condition of withdrawal of the penalties, that same day Mrs. Range filed a petition for bankruptcy. (FOF/COL, R. Item No. 18, at 10; Instrument No. 4, at 4).

On September 5, 1995, Mr. Range then petitioned the bankruptcy court for entry of an order of contempt against the IRS, because it had not withdrawn the notices of deficiency assessing penalties for 1983–1986. (FOF/COL, R. Item No. 18, at 10.). Moreover, Mr. Range claimed the IRS had violated the stay in 11 U.S.C. § 362(a) by issuing notices of intent to levy against Mrs. Range for taxes, interest, and penalties after she filed for bankruptcy, in violation of the agreed order. (Brief for Appellants, Instrument No. 4, at 4). On September 25, 1995, the bankruptcy court entered an agreed order of contempt, declaring the notices of deficiency for the 1983–1986 tax years null and void; ordering the IRS not to take action to assess and/or collect pre-petition taxes, interest, or penalties while the adversary proceeding and Mrs. Range's bankruptcy petition were pending; and requiring the IRS to credit one of the Ranges' civil penalties in the amount of $3,750. (Agreed Order on

Plaintiff's Emergency Motion, R. Item No. 6; Instrument No. 4, at 4). Mrs. Range was subsequently granted a discharge in bankruptcy on April 5, 1996, and filed an adversary proceeding to determine dischargeability of her tax liability on September 3, 1996. (*Id.*). The two adversary proceedings were consolidated on September 16, 1996. (*Id.*). The bankruptcy court held a trial on September 17–19 and September 24, 1997.

Although the bankruptcy court indicated that the IRS abated the Ranges' tax liability, the court concluded nevertheless that it was still an enforceable debt. (FOF/COL, R. Item 18, at 11). The bankruptcy court, then, assuming that the tax liability was a valid debt, addressed the issue of whether that debt was discharged in bankruptcy. The bankruptcy court concluded that Mr. Range's federal income tax liabilities for 1981–1985 were not dischargeable in bankruptcy, and that Mrs. Range's federal income tax liabilities for 1981–1990 were not dischargeable. The bankruptcy court also found that the Ranges were not entitled to damages from the IRS for its assertion of fraud penalties for the 1983–1986 tax years in violation of the injunction in 11 U.S.C. § 524(a)(2) which forbids action on a debt discharged in bankruptcy. The Ranges now appeal the findings of the bankruptcy court. (Brief for Appellants, Instrument

associated with income tax obligations on the other. Tax for which a return was required to be filed within three years preceding bankruptcy or after bankruptcy, or tax assessed within 240 days before bankruptcy or that is still assessable at the time of bankruptcy is income tax entitled to priority and therefore, not discharged. 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8). In addition, taxes not entitled to priority for which no return was filed, or for which a late-filed return was filed within two years before the bankruptcy petition, are not discharged. § 523(a)(1)(B). Finally, taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax" are not discharged. § 523(a)(1)(C). Fines, penalties, or forfeitures payable to a governmental unit that are not compensation for actual pecuniary loss are generally not discharged in bankruptcy, but tax penalties "imposed with

respect to a transaction or event that occurred before three years before the date of the filing of the petition" are discharged. § 523(a)(7). Thus, a tax *penalty* may be discharged because it is not excepted under § 523(a)(7), while the underlying tax liability remains intact because it is excepted under § 523(a)(1). Mr. Range filed for bankruptcy on September 9, 1992, and Mrs. Range filed on August 8, 1995. (FOF/COL, R. Item No. 18, at 9). The bankruptcy court's findings regarding the dischargeability of the penalties are equivocal: "[T]he United States [by assessing a penalty] may have technically violated the section 524(a)(2) discharge injunction as to Mr. Range," and, "[t]he violation of the discharge injunction occurred, if it occurred at all, at the time the Notices of Deficiency were issued." (FOF/COL, R. Item. No. 18, at 10).

No. 4, at 1). The IRS argues that the findings of the bankruptcy court were not clearly erroneous and should stand. (Brief for Appellee, Instrument No. 5, at 2).

## II.

▇ When reviewing a bankruptcy court's decision, the district court functions as an appellate court and applies the standard of review generally applied in the federal court of appeals. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir.1992). Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. *Id.* at 1104. The district court must ascertain whether the evidence supports the findings of the bankruptcy judge and determine whether the district court is "left with the definite and firm conviction that a mistake has been committed." *Id.* (*citing Anderson v. City of Bessemer*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Unlike findings of fact, matters of law are reviewed *de novo*. *In re Coston*, 987 F.2d 1096, 1098–99 (5th Cir.1992). *De novo* review requires the court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions. *In re England*, 141 B.R. 495, 497 (N.D.Tex.1991).

## III.

The Ranges offer two arguments to support the discharge of their tax liability. First, the Ranges argue that the bankruptcy court found that the IRS officially recognized the discharge of their income tax liability for several of the years at issue, and that any reassessment of the taxes today would be barred by the three-year statute of limitations. (Brief for Appellants, Instrument No. 4, at 14–15). Second, the Ranges contend that even if a valid tax debt exists, their income tax liability for the years at issue should be discharged because their actions do not qualify as an attempt in any manner to evade or defeat the payment of taxes under 11 U.S.C. § 523(a)(1)(C), as the IRS claims. ·(*Id.* at 16–18).

## A.

Regarding the discharge and abatement of their income tax liability and the reassessment of the taxes, the Ranges present two arguments. First, the Ranges assert that the IRS officially recognized the discharge of Mr. Range's 1983–1985 income tax liability and Mrs. Range's 1981–1990 income tax liability. Second, they contend that any reassessment of the abated taxes at this time would be barred by the three-year statute of limitations.

### 1.

The Ranges argue that the IRS officially recognized the discharge of Mr. Range's 1983–1985 income tax liability and Mrs. Range's 1981–1990 income tax liability. The bankruptcy court found that IRS records show that the IRS actually recognized the discharge in bankruptcy and abated the Ranges' tax liability. However, the court concluded that IRS testimony at the trial showed that the tax nevertheless remained unpaid and due. (FOF/COL, R. Item No. 18, at 11). The bankruptcy court's finding on this issue stated:

> The IRS transcripts in evidence reflect that the IRS actually recognized the "discharge" in Bankruptcy of the Ranges' liability and abated the taxes in question. In its answer to the complaint filed in this case, the IRS asserts that this abatement was a clerical error. The documents are merely one form of evidence of the debt; the IRS presented evidence of another form, testimony, which demonstrated a valid debt still owing. The tax liability remains unpaid and subject to collection.

(FOF/COL, R. Item No. 18, at 11) (emphasis added).

▇ The Ranges accordingly argue that the bankruptcy court held that the IRS recognized that the taxes were dis-

charged and abated, and that this is a finding of a bankruptcy court. They argue the "finding" of discharge is not clearly erroneous, and claim it is supported by two types of IRS records submitted into evidence: certificates of assessment and payment, and certified transcripts. (Pls.' Exh. No. 11, R. Item No. 16; Pls.' Exh. Nos. 13–15, R. Item No. 16). A certificate of assessments and payments, Form 4340, is an official record of the tax liability of a taxpayer. It lists all the assessments, penalties, interest, and payment on record for the taxpayer. *Godfrey v. United States*, 997 F.2d 335, 339 (7th Cir.1993). Certified transcripts are computer printout reports of the IRS file for a taxpayer, signed and certified by the IRS. (*Id.* at 75:24–81:5).[2] Courts have recognized both types of records as admissible evidence in tax disputes. For example, certificates of assessments and payments are admissible as evidence that a taxpayer has been provided notice of an assessment and demand for payment, *McCarty v. United States*, 929 F.2d 1085, 1089 (5th Cir.1991); and as evidence of payment of tax, *Smith v. United States*, 1993 WL 625564 (N.D.Tex. May 5, 1993). A certified transcript of account is also admissible evidence of a taxpayer's failure to file timely returns. *Ygnatowiz v. United States*, 1997 WL 625502 (Fed.Cl. August 5, 1997), *Farlee v. United States*, 1994 WL 587000 (W.D.Mo. July 18, 1994).

Both the IRS and the Ranges submitted certificates of assessments and payments and certified transcripts as evidence at the trial. (Pls.' Exh. 11, 13–15, R. Item No. 16; Supplemental Designation of R., Instrument No. 7, Gov't Exh. 32, at 1–6). The IRS argues that the records show tax assessed and still owing; the Ranges argue that the records show their tax liability was discharged and abated.

The difficulty in assessing dischargeability in this case arises because the records submitted by both the Ranges and the IRS contradict one another. The Ranges submitted certified transcripts for Mrs. Range, dated September 21, 1995, showing zero tax liability for tax years 1981–1990. (Pls.' Exh. 11, R. Item No. 16). Both the Ranges and the IRS submitted Certificates of Assessments and Payments for Mr. and Mrs. Range, dated December 19, 1995, for 1983–1985 showing Mr. Range's discharge in bankruptcy, with the balance owed by Mrs. Range. (Pls.' Exh. 13–15, R. Item No. 16; Instrument No. 7, Gov't Exh. 32, at 1–6). Both the Ranges and the IRS submitted certified transcripts for the Ranges, for tax years 1981–1982, dated September 25, 1995, showing tax owed. (Pls.Exh. 12, R. Item No. 16; Instrument No. 7, Gov't Exh. 32, at 18–21). The IRS submitted certified transcripts, dated September 26, 1995, for Mr. and Mrs. Range for tax years 1983–1985 showing a zero account balance, and for 1987–1990 showing tax owing. (Instrument No. 7, Gov't Exh. 32, at 22–25, 28–31). The IRS also submitted a certified transcript, dated September 26, 1995, for Mr. Range for the 1986 tax year showing tax due. (*Id.* at 26–27).

For the 1983–85 tax years, the certificates of assessments and payments submitted by the Ranges show Mr. Range's discharge in bankruptcy. (Pls.' Exh. 13–15, R. Item No. 16). Testimony by the IRS was contradictory, sometimes agreeing to and sometimes denying discharge and abatement of Mr. Range's liability. (Tr. 9/17/98, R. Item No. 12, Vol. I, 58: 12–13, 70:4–74.23, 83:20–84:23, 85:11–88:10–89:16). The IRS failed to clearly explain why the testimonial and record

2. Both types of records contain the same certification statement:
 I certify that the foregoing transcript of the taxpayer named above, in respect to the taxes specified, is a true and complete transcript for the period stated, of all assessments, penalties, interest, abatements, credits, refunds and advance or unidentified payments relating thereto as disclosed by the records of this office as of the date of this certification.
 (Pls.' Exh. Nos. 11, R. Item No. 16, Pls.' Exh. Nos. 13–15, R. Item No. 16).

evidence proved contradictory. However, the bankruptcy court's credibility assessment of testimony is entitled to deference unless clearly erroneous. *See Commercial Credit Corp. v. Reed,* 154 B.R. 471, 475 (E.D.Tex.1993) ("[A] Bankruptcy Court's assessment of the witnesses usually will not be held to be clearly erroneous").

A certificate of assessments and payments offered in evidence by the IRS has been held to be presumptive proof of a valid assessment where the taxpayer did not produce evidence to counter the presumption. *United States v. McCallum,* 970 F.2d 66, 71 (5th Cir.1992), *aff'd,* 20 F.3d 466 (5th Cir.1994). The Ranges argue that the IRS should not be able to contradict its own assessment records with mere oral testimony, because to allow such rebuttal would upset the procedures set by statute and regulation. (Brief for Appellants, Instrument No. 4, at 2–3). However, the bankruptcy court found that the IRS did not offer testimony to rebut the presumption of correctness of the certificate produced by the Ranges, rather to explain that they show assessment and continuing liability for the tax. (Tr. 9/17/98, R. Item No. 12, Vol. I, 58:12–13).

The Ranges did not present evidence to rebut the presumption that the assessments they produced were valid. On the one hand, the Ranges contend that the certificates of assessment showing zero liability are presumptively correct. They claim that under *McCallum,* only the taxpayer may rebut the presumption of valid assessment, not the government. (Appellants Reply Brief, Instrument No. 6). The Ranges then assert that because the certificate of assessment showing zero liability is correct, they need not rebut the certificates of assessment offered by the IRS showing an outstanding assessment. They seek to use the *McCallum* presumption to bolster the certificate showing zero assessment, but do not want to rebut the validity of the IRS' certificate showing an assessment as required under *McCallum.* The Ranges' argument is without merit.

The Ranges failed to meet their burden under *McCallum* of presenting evidence to rebut the presumption of correctness of the certificates of assessment. Accordingly, it was not clearly erroneous for the bankruptcy court make a credibility assessment of the IRS witnesses' testimony and find that Mr. Range's tax liability for 1983–1985 was abated. Therefore the bankruptcy court's finding that Mr. Range's tax liability for 1983–85 still remains is **AFFIRMED.**

The same transcripts documenting abatement for Mr. Range from 1983–85 verify that the tax was still owed by Mrs. Range, and show the balance. (Pls.' Exh. 13–15, R. Item No. 16). The transcripts show that Mrs. Range had zero tax liability, while the certificate of assessment indicates that although there was a discharge, the tax was still collectible. The IRS presented testimony regarding the contradictory documents and described how some documents were kept as a master set for the IRS, and some documents were not part of the master set. The IRS argued that the certificate of assessment was part of the master set, and consequently reflected the correct information regarding Mrs. Range's tax liability. The testimony regarding transcripts for Mrs. Range alone showed zero liability for 1983–1985. (Tr. 9/17/98, R. Item No. 12, Vol. I, 81:12–82:17, 89:17–91:14). The transcript at issue showed only that Mrs. Range made an offer in compromise for 1983–85. However, this offer was later withdrawn, and so the tax liability remained. Therefore the bankruptcy judge's finding that Mrs. Range still owes tax for 1983–85 was not clearly erroneous, and is **AFFIRMED.**

For the other tax years in question, 1981–1982 and 1986–1990, transcripts in evidence for the Ranges for 1981–1982 and 1987–1990, and for Mr. Range for 1986, show a balance owed that was apparently unaffected by Mr. Range's December 28, 1992 discharge in bankruptcy. (Instrument No. 7, Gov't Exh. 32, at 18–31). IRS testimony on the significance of Mrs.

Range's transcripts is inconclusive, because it does not provide a clear explanation for the zero balances. (Tr. 9/17/98, R. Item No. 12, Vol. I, 75:20–88:10). Because the transcripts all predate Mrs. Range's discharge in bankruptcy on April 5, 1996, they are not credible evidence of discharge and abatement of her tax liability for those years. (Pls.' Exh. 11, R. Item. No. 16). Therefore, the tax liability remains for the years 1981–82, and 1986–90.

The bankruptcy court was within its discretion in accepting oral testimony that contradicted the transcripts and certificates of assessments and payment offered into evidence by the debtor and the IRS. Accordingly, the bankruptcy court's findings that both Mr. and Mrs. Range still owe tax for the 1983–85 tax years, for the 1981–82 tax years, and for the 1986–90 tax years are **AFFIRMED.**

### 2.

Second, the Ranges argue that since the bankruptcy court indicated that the IRS recognized the discharge and abatement of their taxes, the IRS is barred from reassessing the taxes now due to the statute of limitations. The Ranges assert that the IRS would be unable to reassess the taxes now, because the reassessment would be outside the three-year statute of limitations, and none of the statutory exceptions apply. (Brief for Appellants, Instrument No. 4). Although the Ranges' argument has merit, it is moot as the Court has indicated that the bankruptcy court's finding that the taxes were unabated was not clearly erroneous.

 As a general rule, an abatement will eliminate an assessment; but reimposition of a validly abated assessment must take place within the relevant statutory limitations period. *Bugge v. United States,* 99 F.3d 740, 744 (5th Cir. 1996). The Internal Revenue Code establishes a three-year statute of limitations on assessments of income tax:

Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

26 U.S.C. § 6501(a). Mr. Range filed income tax returns for 1983–1985 on June 23, 1987. (FOF/COL, R. Item No. 18, at 4). The statute of limitations for assessment for those years runs from the date of filing. 26 U.S.C. § 6501(a). Therefore, if the Ranges' taxes had indeed been abated, the IRS would not be able to reassess the 1983–85 tax liability *today,* for almost twelve years have passed since the date Mr. Range filed his returns.

 The Internal Revenue Code provides specific exceptions to the three-year limit in 26 U.S.C. § 6501(c). The IRS did not allege that any of those exceptions apply. The bankruptcy court found that Mr. Range's discharge and abatement was a "clerical error" and that a valid tax liability still existed for 1983–1985. (FOF/COL, R. Item No. 18, at 11). However "clerical error" is not a listed exception. The Fifth Circuit has declined to create additional judicial exceptions to that limitation. *Bugge,* 99 F.3d at 745 (authorizing reversal of an erroneous abatement, on the facts of the case only, when the error resulted from an attempt to eliminate a duplicate assessment, a holding based not on a new exception but on lack of IRS statutory authority to effect the abatement). Accordingly, none of the statutory exceptions to the statute of limitations would apply in this case.

Therefore, if the bankruptcy court had found, as the Ranges claim, that their tax liability was abated, any reassessment now would be outside the three-year limitations period. Furthermore, since none of the statutory exceptions apply, the IRS would be unable to reassess the taxes.

However, the statute of limitations argument is moot, as the Court has found that the bankruptcy court's finding that Mr.

Range's tax liability for 1983–85 was not abated was not clearly erroneous. Accordingly, the bankruptcy court's finding on this issue is **AFFIRMED.**

## B.

The IRS claims that the Ranges' taxes were not discharged, pursuant to an exception to a discharge in bankruptcy: fraud or evasion of payment under 11 U.S.C. § 523(a)(1)(C). The Ranges argue that their actions do not qualify as an attempt in any manner to evade or defeat the payment of taxes, and that their income tax liability for the years at issue subsequently should be discharged. (*Id.* at 16–18).

■ A discharge in bankruptcy under Chapter 7 of the Bankruptcy Code generally discharges debts that arose before the date of the petition. 11 U.S.C. § 727(b). Certain debts are listed in Section 523 as exceptions to this general rule. The exception at issue in this dispute provides in relevant part:

(a) A discharge under section 727 of this title does not discharge an individual debtor from any debt—

(1) for a tax—

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1)(C).

■ The Fifth Circuit's standard for determining whether a person has "wilfully attempted in any manner to evade or defeat such tax" was established in *In re Bruner*, 55 F.3d 195 (5th Cir.1995). In *Bruner*, the court applied a three-part test for determining dischargeability of the tax debt of a debtor who is financially able to pay his taxes but chooses not to do so. The debt will not be discharged if: (1) the debtor had a duty under the law; (2) the debtor knew he had that duty; and (3) the debtor voluntarily and intentionally violated that duty. *Bruner*, 55 F.3d at 197. In determining wilfulness, the Fifth Circuit

concluded that acts of commission as well as acts of *omission* were sufficient to meet the test, so that wilful failure to file tax returns met the third prong of the test. *Id.* at 199.

■ The bankruptcy court's finding that the evidence in the case established that the Ranges wilfully attempted to evade or defeat their tax liability was not clearly erroneous. The court found evidence that from 1981–1990, the Ranges had adequate resources to pay the taxes. (FOF/COL, R. Item No. 18, at 12). The finding is based on reports of income or estimated income on the Ranges' tax returns for 1981–1990, as well as evidence of purchases of cars, planes, and a home during 1981–1987. (*Id.* at 4–5, 7–8).

The court also found that the Ranges had a duty to file because they had income to report. (FOF/COL, R. Item No. 18, at 6, 8). The IRS examined the Ranges' tax returns from 1981–1986 and either accepted reported income figures or calculated adjusted income for those years. For 1987–1990, the Ranges' tax returns reported merely estimated income. The amounts for the years in question are:

| Tax Year | Income (Reported, Adjusted, or Estimated) |
|---|---|
| 1981 | $ 67,051 (reported and accepted by IRS) |
| 1982 | $114,265 (reported income adjusted by IRS) |
| 1983 | $ 57,926 (reported and accepted by IRS) |
| 1984 | $ 29,260 (reported and accepted by IRS) |
| 1985 | $ 89,241 (reported income adjusted by IRS) |
| 1986 | $230,000 (reported income adjusted by IRS) |
| 1987 | $ 40,000 (estimated income) |
| 1988 | $ 30,000 (estimated income) |
| 1989 | $ 30,000 (estimated income) |
| 1990 | $ 37,096 (estimated income) |

(FOF/COL, R. Item No. 18, at 4–5, 7). The court also found that the Ranges knew they had a duty to file their returns and pay their taxes based on the fact that they hired accountants to file extensions and filed corporate tax returns. (*Id.* at 6–7).

Finally, the bankruptcy court found that the Ranges simply chose not to pay their taxes. (FOF/COL, R. Item No. 18, at 6, 8). The Ranges did not file timely returns or make estimated tax payments for the years 1981–1989, and requests for extension filed during those years did not in-

clude payment of estimated tax due. They filed an extension for 1990 and timely filed their 1990 return, but paid only $1,000 of the estimated tax liability of $8,572. (*Id.* at 8).

The Ranges argue that application of the standard in *Bruner* for finding a wilful attempt to evade or defeat a tax obligation requires more than a showing of late-filed returns and nonpayment of taxes. (Instrument No. 4, at 16–18). They argue that the actions of the taxpayers in *Bruner* can be distinguished from the Ranges' consistent failure to file and pay their taxes. (*Id.* at 16). The Court finds that this argument is without merit.

The taxpayers in *Bruner* failed to pay taxes and "engaged in a pattern of failing to report their income and file returns," conduct the bankruptcy court found to demonstrate a wilful attempt to evade or defeat tax assessment. *Bruner*, 55 F.3d. at 198. The taxpayers also formed a shell entity through which they passed income so that it would not be imputed to them, and engaged in numerous cash transactions to hide income. *Id.* Those acts of commission notwithstanding, the Fifth Circuit clearly stated that its test for section 523(a)(1)(C) evasion could be met by acts of omission alone. *Id.* at 199.

The Fifth Circuit discussed contradictory holdings of the Sixth and Eleventh Circuits on the issue of the section 523(a)(1)(C) evasion and specifically agreed with the decision in the Sixth Circuit. In *In re Toti*, 24 F.3d 806, 808 (6th Cir.1994), the Sixth Circuit found that wilful failure to file and pay, even though it does not rise to the status of a felony, is sufficient to meet the test for non-dischargeability in section 523(a)(1)(C). *Bruner*, 55 F.3d at 200. The Fifth Circuit specifically rejected the argument and holding in *In re Haas*, 48 F.3d 1153, 1155–1156 (11th Cir. 1995), that knowing failure to pay taxes, without more, does not constitute section 523(a)(1)(C) evasion. *Bruner*, 55 F.3d at 200. Even if the Fifth Circuit had not clearly rejected the rationale in *Haas*, the facts in that case are distinguishable from the circumstances in which the Ranges find themselves. The taxpayer in *Haas* accurately filed his tax returns, but used his income to pay personal and business debts instead of his tax liability. *Haas*, 48 F.3d at 1154. The Ranges did not use their income to pay their outstanding debts; rather, they purchased several expensive items such as cars, an airplane, and a house. The Ranges' consistent failure to file their returns and pay their taxes is sufficient evidence of conduct that, under *Bruner*, prevents discharge of their tax liability under 11 U.S.C. § 523(a)(1)(C).

The Ranges also dispute the bankruptcy court's finding that they had the ability to pay the taxes for the years at issue. They assert that the purchases cited by the court were made on credit extended to the Ranges so that Westheimer Memorial Bank could dump devalued assets owned by bank insiders that secured bad loans. (Instrument No. 4, at 8–9). They argue that the court's determination is factually insufficient because it fails to identify specific assets the Ranges could have used to pay their taxes. (*Id.* at 7). They also offer Revenue Officer Franklen's testimony that in 1991, she could find no assets from which to collect the Ranges' tax debt. (*Id.* at 11).

These arguments do not disprove that the Ranges had the ability to pay. Purchase of assets on credit does not necessarily preclude availability of cash and other resources with which to pay income taxes. Although *Bruner* clearly rejects the argument in *Haas* that any evidence of income from which a tax debt can arise would make all tax debts nondischargeable, *Bruner*, 55 F.3d at 199–200, the bankruptcy court based its finding in part on evidence that the Ranges made substantial monthly payments to service their debts. (FOF/COL, R. Item No. 18, at 5, 7, 8). The Ranges, like the taxpayer in *Haas*, had substantial debts and not enough income to meet them all. *Haas*, 48 F.3d at 1154. In addition, Revenue Officer

Franklen's failure to find available assets in 1991 does not prove lack of assets during the years in which the Ranges *incurred* the tax liability; rather it demonstrates lack of available assets at the time of her record search. *See Bruner,* 55 F.3d at 197 (determination of ability to pay examines income at the time tax liability was incurred). Accordingly, the bankruptcy court's determination was not clearly erroneous.

For the reasons stated earlier, the bankruptcy court's decision that Mrs. Range's 1981–1990 income tax liabilities are not discharged in bankruptcy should be **AFFIRMED.** The bankruptcy court's decision that Mr. Range's 1981–1982 and 1983–85 income tax liabilities are not discharged in bankruptcy is **AFFIRMED.**

## IV.

Finally, the Ranges argue that the bankruptcy court erred in finding that the Ranges were not entitled to damages under 11 U.S.C. § 106. The bankruptcy court found they suffered no damages from the Notices of Deficiency issued by the IRS that were not compensated by the agreed order of contempt against the IRS for its violation of the section 524 discharge injunction. (Instrument No. 4, at 18–19). The Ranges assert that the finding of the bankruptcy court should be reversed and remanded for determination of damages the Ranges incurred in contesting the IRS actions to assess fraud penalties for 1983–1986. (*Id.* at 19–20).

The bankruptcy court found that the IRS technically violated the section 524(a)(2) discharge injunction as to Mr. Range, but that he was not damaged by the violation. (FOF/COL, R. Item No. 18, at 10). Consequently, the court awarded no damages beyond those granted in the agreed order of September 25, 1996. The court also found that the United States had not waived sovereign immunity from liability for damages from such a violation. (FOF/COL, R. Item No. 18, at 10). The Ranges argue that they suffered damages attendant to the IRS pursuit of the fraud penalty before its issuance of the Notice of Deficiency. (*Id.* at 20). They allege damages for attorneys' fees and costs in contesting the allegations of fraud, and for the loss of the opportunity to compromise the outstanding tax liabilities due to the fraud investigation. (*Id.* at 13–14). They argue that the United States waived sovereign immunity to permit recovery of attorneys' fees and expenses incurred in litigation under 26 U.S.C. § 7430. The Ranges contend that the damage issue should be remanded for findings on whether the Ranges meet the standard for recovery of damages under section 7430, and the precise amount of those damages.

The IRS contends that the bankruptcy court's decision not to award damages is not clearly erroneous, alleging that both the IRS and the Ranges treated the fraud investigation as a forum for determining dischargeability of the underlying tax liability. (Instrument No. 5, at 13). It disputes the allegation of loss of the compromise of outstanding tax liabilities, arguing there were other causes for the failure of the Ranges and the IRS to agree. (*Id.* at 13–14). In addition, the IRS argues that the Ranges' claim for damages is not timely, and does not meet the requirements of section 7430. (*Id.* at 15–17).

Before considering the merits of this issue, the Court must first determine whether the bankruptcy court has jurisdiction to award damages under 26 U.S.C. § 7430, and whether the Ranges are barred from raising this argument for the first time on appeal.

### A.

Neither the Ranges nor the IRS challenges the conclusion of the bankruptcy court that the IRS has not waived sovereign immunity as to additional damages under 11 U.S.C. § 106. The Ranges argue, that nevertheless the costs can be assessed against the IRS under 26 U.S.C. § 7430. The IRS argues that the Ranges'

request for damages under § 7430 is being raised for the first time on appeal, and that in any case, the Ranges do not meet the jurisdictional prerequisites for being a "prevailing party" to recover damages under § 7430.

The first issue to consider is whether the bankruptcy court has the authority to make a determination of damages under § 7430. Neither party addressed this issue in their submissions. Section 7430 of the Internal Revenue Code authorizes damages as follows:

> (a) In general.—In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—
>
> > (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and
> >
> > (2) reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430(a). The term "court proceeding" is defined as "any civil action brought in a court of the United States (including the Tax Court and the United States Claims Court)." *Id.* § 7430(c)(6). The issue of whether the bankruptcy courts are courts of the United States, and whether they have jurisdiction to hear petitions for damages under 26 U.S.C. § 7430 varies among the circuit courts of appeal. *See In re Yochum*, 89 F.3d 661, 667–668 (9th Cir.1996) (bankruptcy court is a "court of the United States" and concluding Congress intended a broad reading of the statute); *In re Grewe*, 4 F.3d 299, 304 (4th Cir.1993) (bankruptcy court, as unit of the district court, is a "court of the United States" with power to assess attorney fees under § 7430); *In re Graham*, 981 F.2d 1135, 1139 (10th Cir.1992) (declining award of attorney fees by the bankruptcy court without challenging its jurisdiction); and

*In re Brickell Investment Corp.*, 922 F.2d 696, 701 (11th Cir.1991) (only Article III courts and courts listed in § 7430 have jurisdiction).

The Fifth Circuit and the federal district courts in Texas have not addressed the issue. However, the Bankruptcy Court for the Northern District of Texas accepted without discussion the bankruptcy court's power to award attorney fees under 26 U.S.C. § 7430. *In re Jones*, 164 B.R. 543, 547 (Bankr.N.D.Tex.1994). Bankruptcy courts outside of the circuits with decisions on the issue have either determined they have the authority to award or reject the application for costs, or have awarded or rejected the applications without comment on jurisdiction. *In re ACME Music Co.*, 208 B.R. 838 (Bankr.W.D.Pa.1997) (bankruptcy court has jurisdiction to award costs as court making determination as to underlying issues); *In re Hurricane R.V. Park*, 199 B.R. 421 (Bankr.D.Utah 1996) (denying costs without comments on jurisdiction); *In re Evans*, 188 B.R. 598 (Bankr.D.Neb.1995) (bankruptcy court has jurisdiction to award fees); *In re Burch*, 163 B.R. 854 (Bankr.E.D.Okla.1993) (denying costs without comment on jurisdiction); *In re Chambers*, 140 B.R. 233 (N.D.Ill. 1992) (bankruptcy court has jurisdiction to award fees); *In re Kreidle*, 145 B.R. 1007 (Bankr.D.Colo.1992) (bankruptcy court has jurisdiction to award fees); *In re Robidoux*, 116 B.R. 320 (D.Mass.1990) (reversing award of attorney fees by bankruptcy court on other grounds).

The statute vests jurisdiction in courts of the United States as well as the Tax Court and the Court of Claims. The Court of Claims is an Article III court, while the Tax Court is an Article I court, created by legislation. *Knighten v. Comm'r*, 705 F.2d 777 (5th Cir.) (*per curiam*), *cert. denied*, 464 U.S. 897, 104 S.Ct. 249, 78 L.Ed.2d 237 (1983). Likewise, bankruptcy courts were created by legislation under Article I. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct.

2858, 73 L.Ed.2d 598 (1982). The bankruptcy courts are also adjuncts to federal district courts (Article III courts). *Id.* Canons of statutory construction suggest that "includes" broadens a statute's reach, instead of limiting it. *In re Abernathy,* 150 B.R. 688, 688–89 (Bankr.N.D.Ill.1993); *see American Surety Co. v. Marotta,* 287 U.S. 513, 53 S.Ct. 260, 262, 77 L.Ed. 466 (1933). The Supreme Court has noted that the phrase "include" is not one of "all embracing definition but connotes simply an illustrative application of the general principle." *Fed. Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 62 S.Ct. 1, 4, 86 L.Ed. 65 (1941). If Congress intended to limit the meaning of "courts of the United States" to Article III courts and the two courts listed (the Tax Court and the Court of Claims), it clearly could have indicated its intention. Furthermore, in light of the fact that § 7430(c)(6) expressly authorizes a non-Article III court to award damages under the statute, it seems likely that the statute also confers jurisdiction on another type of non-Article III court. Accordingly, the Court finds that the bankruptcy court has jurisdiction to consider an award of damages under § 7430.

### B.

The IRS argues that regardless of jurisdiction, the Ranges petitioned the bankruptcy court to award damages under 11 U.S.C. § 106. The IRS asserts that the Court may not consider this issue since the Ranges are raising the issue of their entitlement to damages under 26 U.S.C. § 7430 for the first time on appeal. (Instrument No. 5, at 17). The Ranges point to the need to wait for the final determination of the underlying issues on appeal before proving their claim. 26 U.S.C. § 7430(c)(4)(A). Provisions specifying the standard for appeal of an award of costs suggest merging the determination of costs with those of the court proceeding at issue, but they do not require it.

Right of appeal—(1) Court proceedings.—An order granting or denying (in whole or in part) an award for reasonable litigation or administrative costs under subsection (a) in a court proceeding, *may* be incorporated as a part of the decision or judgment in the court proceeding and shall be subject to appeal in the same manner as the decision or judgment.

26 U.S.C. § 7430(f) (emphasis added).

The question of whether § 7430 allows separate proceedings to determine liability for damages and the award of damages need not be answered here. "In general, a party appealing from a Bankruptcy Court opinion may not raise issues on review that were not raised at the trial level." *Commercial Credit Corp. v. Reed,* 154 B.R. 471, 474 (E.D.Tex.1993). In the statement of issues for appeal (Instrument No. 1), the damages issue was stated thus: "[w]hether the Plaintiffs are entitled to damages for the government's violation of the discharge injunction?" (Instrument No. 1, at 3). The designation did not state under which statute the Ranges requested damages. However, "[a] District Court, acting as an appellate court in a bankruptcy case, may consider only the evidence which was presented before the Bankruptcy Court and made part of the record." *Commercial Credit Corp. v. Reed,* 154 B.R. 471, 474 (E.D.Tex. 1993). Thus the Court may examine only the record below to determine if there is sufficient evidence to make an award of damages under § 7430.

The Ranges request damages in association with the administrative proceeding to determine applicability of tax penalties for 1983–1986, and for court costs associated with determination of the dischargeability of their taxes for additional years. (Instrument No. 4, at 1, 14). To receive an award of costs under 26 U.S.C. § 7430, the "prevailing party" must exhaust its available administrative remedies within the Internal Revenue Service. 26 U.S.C. § 7430(b)(1). The prevailing party

will be denied an award of expenses if it unreasonably protracted the administrative or court proceeding. *Id.* § 7430(b)(3). The "prevailing party" is one which has substantially prevailed with respect to the amount in controversy, or with respect to the most significant issue or set of issues presented. *Id.* § 7430(c)(4)(A). However, damages are not available if the position of the Internal Revenue Service was substantially justified. *Id.* § 7430(c)(4)(B).

■ The statute also establishes certain filing requirements, which can be superseded by procedures established by a rule of the court considering the application. *Id.* § 7430(c)(4)(A)(ii). Subsection 7430(c)(4)(A)(ii) of the Internal Revenue Code also requires that the applicant demonstrate qualification as a "party" under the terms of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(B).

> "Party" means (1) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed....

28 U.S.C. § 2412(d)(2)(B).

■ The Ranges and the IRS address the elements of 26 U.S.C. § 7430 as to exhaustion of administrative remedies, unreasonable protraction of proceedings, substantial lack of justification for the IRS position, and prevailing on the amount in controversy or the most significant issue or set of issues presented. The record contains some information from which this Court could address those issues. Yet neither party has addressed the crucial requirement that the "prevailing party" qualify as a "party" under 28 U.S.C. § 2412(d)(2)(B). The bankruptcy court did not make any factual findings as to which party prevailed in the suit below. In addition, neither the record below nor the briefs of the parties lists or documents the

costs requested. This Court cannot review the issue of damages under either 11 U.S.C. § 106 or 26 U.S.C. § 7430 without further factual findings. The issue of whether the Ranges are entitled to damages under § 7430 instead of 11 U.S.C. § 106, as argued below, should be **REMANDED** for further consideration in light of this decision.

## V.

The finding of the bankruptcy court that the tax liability of Samuel H. Range for 1981–1985 is not discharged is **AFFIRMED.**

The finding of the bankruptcy court that the tax liability of Connie C. Range for 1981–1990 is not discharged is **AFFIRMED.**

The judgment of the bankruptcy court that the Ranges are not entitled to damages against the Internal Revenue Service for violation of the discharge injunction is **VACATED** and **REMANDED** for further consideration in light of this opinion.