**In re Gregory Scott CARNES, Debtor.**

**United States of America, Plaintiff,**

v.

**Gregory Scott Carnes, Defendant.**

**Bankruptcy No. 97–44833–2. Adversary No. 99–4211.**

United States Bankruptcy Court, W.D. Missouri.

Feb. 1, 2000.

Steven C. Block, Dicus, Davis, Sands & Collins, Kansas City, MO, for Debtor.

Janice E. Stanton, Kansas City, MO, trustee.

### ORDER

FRANK W. KOGER, Chief Judge.

On May 14, 1999, the United States of America filed a Complaint to Determine Dischargeability of Debt, asserting that Debtor Gregory Scott Carnes' obligation for nearly $800,000 in federal income taxes, interest, and penalties was nondischargeable under 11 U.S.C. §§ 523(a)(1)(A), 523(a)(B)(ii), and 523(a)(1)(C).[1] After the Debtor filed an Answer and the matter was set for trial, the parties filed a motion asking the Court to adjourn the trial which had been set for November 2, 1999, and to determine the matter based on cross motions for summary judgment.

According to this motion, the parties maintain no factual dispute and agree that the Debtor's 1994 and 1996 federal income tax liabilities, plus interest and penalties thereon, are nondischargeable under §§ 523(a)(1)(A) and 507(a)(8)(A)(i). Furthermore, the United States concedes that the penalties with respect to the Debtor's 1982 through 1993 federal income tax liabilities are dischargeable pursuant to § 523(a)(7). Consequently, the only remaining issue in this action is whether the Debtor's federal income tax liabilities for the tax years 1982 through 1993, plus interest thereon, are excepted from discharge pursuant to § 523(a)(1)(C) of the Bankruptcy Code.

On October 27, 1999, this Court granted the parties' motion to adjourn the trial and entered an order setting the briefing schedule pertaining to the cross motions for summary judgment. The briefing having now been completed, the Court hereby issues the following Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.[2]

### Standard of Review

 The United States bears the burden of proving nondischargeability under § 523 by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Furthermore, statutory exceptions to discharge are to be construed strictly and narrowly in favor of dischargeability, and "should be confined to those plainly expressed." *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998).

### Findings of Fact and Conclusions of Law

The sole issue in this case is whether the Debtor's 1982 through 1993 federal income tax liabilities, and interest thereon, are excepted from discharge under § 523(a)(1)(C). Section 523(a)(1)(C) provides that a discharge under § 727 does not discharge an individual debtor from any debt for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C).

The United States does not allege that the Debtor made a fraudulent return; rather, it asserts that the second part of this provision applies because the Debtor took actions which constitute a willful at-

---

1. Hereafter, all statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended.

2. The Court wishes to commend the attorneys for both parties on their thorough and persuasive briefs and memoranda.

tempt to evade or defeat his federal income taxes. The Debtor freely admits he took certain actions with the purpose of avoiding collection of his tax obligations, but he asserts that mere avoidance of *payment* of taxes, as opposed to the avoidance of the *imposition or assessment* of taxes, does not fall within this exception to discharge. As a result, the narrow issue presented here is whether § 523(a)(1)(C) encompasses cases where the debtor took actions with the purpose of preventing the government from collecting a tax debt already assessed, or whether, as Debtor urges, that exception to discharge is only invoked in cases where the Debtor took actions to avoid the imposition or assessment of the taxes.

The undisputed facts as to the Debtor's attempts to avoid payment of his taxes, as supplied by the parties' briefs and supporting documents, are as follows:

In 1981 or 1982, the Debtor started a sole proprietorship called Federal Lease Associates. In 1984 or 1985, he changed the name of his sole proprietorship to Westar Oil and Minerals but continued to engage in the same line of business as he had under the previous business name, specifically, leasing and brokering oil and gas leases. He has operated his business under the name Westar Oil and Minerals from that time to the present.

In 1988, the Debtor began leasing the right to drill for oil and gas on public lands belonging to the United States from the U.S. Department of Interior, Bureau of Land Management. He earned income by selling or assigning these leases to third parties. In the late 1980s and early 1990s, in addition to brokering oil and gas leases, the Debtor also began to own and operate producing wells.

Meanwhile, for each tax year from 1982 to 1993, the Debtor failed to file his federal income tax returns by their respective due dates. Specifically, the Debtor did not file his federal income tax returns for the years 1982 through 1987 until 1993. He filed his 1988 return in 1990. His 1989, 1990, and 1991 returns were filed in 1992, and his 1993 return was filed in October, 1994, ten days after his requested extension period expired.

The Debtor's adjusted gross income for the years 1987 through 1993 were as follows:

| | |
|---|---|
| 1987 | $ 80,817 |
| 1988 | 84,035 |
| 1989 | 120,588 |
| 1990 | 78,000 |
| 1991 | 226,848 |
| 1992 | 69,000 |
| 1993 | 36,625 [3] |

The Debtor made no payments toward his federal income tax obligations for any of these years until November 15, 1994. He testified at a deposition that he did not pay his income taxes because he either did not have the money to pay the taxes or if he did have any money, he used the money to pay other creditors. He testified that he did not know how his income was spent or why he did not have the money to pay the taxes, other than the fact that his income was sporadic.

In October 1994, the Debtor signed an IRS Installment Agreement which required him to pay $100 per month, $75 of which was to be applied to his 1994 federal income tax liability and $25 of which was to be applied to his 1982 through 1993 federal income tax liabilities, until his total tax liability was paid in full. Also under the Installment Agreement, the Debtor was to pay $4,500 toward his 1994 taxes by January 15, 1995, and pay his 1994 taxes in full by April 15, 1995.

The Debtor made eight $25 payments, for a total of $200, toward his 1982 through 1993 taxes under the Agreement. He also made four $75 payments, for a total of

**3.** The figures for the adjusted gross income for the years 1987 through 1992 were calculated by an IRS auditor in 1992. As discussed below, the Debtor asserts that these figures were too high, but he did not formally contest the calculations because he did not want to go through the audit process again.

$300, toward his 1994 federal income tax liability. His last $75 payment was made March 1, 1995. The Debtor failed to make the $4,500 payment toward his 1994 federal income tax liability by January 15, 1995, as was required by the Installment Agreement, nor did he pay his 1994 federal income tax liability before April 15, 1995. As a result, the Debtor defaulted on his obligations under the Installment Agreement by failing to make the payments required thereunder.

When the Debtor was questioned at the deposition about his failure to make payments under the Installment Agreement, he testified that he stopped making the $100 monthly payments because he did not have the money to make payments and he believed that the small payments were not making a difference to his overall tax obligation.

The parties agree that the Debtor's adjusted gross income for 1995 was $167,000 and that he paid approximately $51,000 toward his 1995 federal income tax liability in January, 1996. In addition, the Debtor concedes that in 1996, he and his wife paid $7,500 for an option to purchase the house in which they were living, and they paid an additional $7,500 in 1997 to extend the option to purchase the house. Meanwhile, they made no payments on their 1996 or 1997 federal income tax liabilities or against any of the past due liabilities, despite having $116,738 in adjusted gross income in 1997.

During the weeks of November 10, 1996, and January 12, 1997, the IRS sent the Debtor final demands for payment of the delinquent taxes and notified him that failure to pay these taxes would result in collection efforts, including the service of IRS levies. On March 10, 1997, Revenue Officer Mike Pryor mailed notices of levy to nine different persons or entities who were potentially holding funds belonging to the Debtor. The Debtor concedes that he knew at this time that the IRS was attempting to collect the past taxes through the use of levies. Only one of the entities, a Rutter & Wilbanks Corp., responded to this levy by sending a check for $120.35, representing the amount owed to the Debtor, less the amount exempt from levy. The IRS applied this amount to the Debtor's 1982 income tax liability.

On September 10 and 11, 1997, Revenue Officer Pryor again mailed notices of levy to eight different entities from which the Debtor had received income during 1996, including Hanson & Strahn Energy Land Services Inc., and Maralex Resources Inc. On September 24, 1997, Revenue Officer Pryor mailed notices of levy to four additional entities who were potentially holding funds belonging to the Debtor, including Placid Refining.

On October 6, 1997, after receiving a copy of the notice of levy sent to Placid Refining, the Debtor transferred his working interest in the Broadhead wells and associated equipment to his wife. Debtor admits that his wife paid no consideration for this interest and that he transferred the interest to her in an effort to prevent the IRS from receiving the income generated by those wells. Specifically, he testified that he transferred the interest in the Broadhead wells in October 1997 to protect the income generated by those wells so that he could "put food on the table, [and] to pay some people that I had overextended myself with that had been working for me in Louisiana." He also testified he wanted to prevent the wells from being shut down.

Likewise, on October 8, 1997, the Debtor assigned his royalty interest in the Michigan wells to his wife for no consideration. On October 16, 1997, after Revenue Officer Pryor had mailed a notice of levy to Maralex Resources, which was the operator of the Mesa Colorado wells, the Debtor assigned his royalty interest in the Mesa Colorado wells to his wife. Again, she paid no consideration for these interests.

At the time the Debtor transferred his interests in the Broadhead wells, the Michigan wells, and the Mesa Colorado wells to

his wife, they were the only income-producing properties owned by the Debtor. Furthermore, the Debtor was insolvent in October 1997 when he transferred those interests.

In addition, the Debtor admits that on October 27 and 28, 1997, less than two weeks after transferring all of his income-producing property to his wife so as to avoid paying his federal income tax debt, he spent at least $4,500 gambling at the Grand Casino in Avoyelles Parish, Louisiana, rather than paying the money toward his federal income tax liabilities.

On December 2, 1997, Revenue Officer Pryor received a check for $4,719.36 from Placid Refining pursuant to the September 24, 1997, levy. This check represented the proceeds from the October run of the Broadhead leases which had been held in suspense pursuant to the September 24 levy.

On December 9, 1997, the Debtor filed his Chapter 7 Petition. The IRS filed a proof of claim asserting secured claims in the amount of $776,926.97; unsecured priority claims in the amount of $9,401.89; and a general unsecured claim in the amount of $695.00.

Finally, in mid–1998, after he filed bankruptcy, the Debtor attempted to sell an oil and gas lease to one Hanson & Strahn. After Hanson & Strahn informed the Debtor that it would be required to pay the proceeds of the sale to the IRS pursuant to a levy, the Debtor canceled the sale, admittedly because he would not receive the proceeds from the sale.[4] The United States points this out as evidence of the Debtor's blatant refusal to pay his taxes, both before and after he filed for bankruptcy relief. As the United States points out, the Debtor stated at his deposition that he was not trying to avoid the IRS, but on the other hand, he believed that paying four or five thousand dollars against the $794,000 debt he owed to the

IRS "absolutely makes no dent in the bottom line." He testified that there was no incentive for him to work and hold the lease for a year and then sell it and not receive any funds on it when he needed the money.

In sum, although the Debtor asserts he did not specifically set out to evade his taxes (as would a tax protestor, for example) and he simply used his money for other purposes, the Debtor candidly admits that he neglected to file tax returns so as to avoid the IRS' collection of taxes he believed he could not pay. In addition, he candidly admits that he transferred all of his income-producing interests to his wife for the purpose of removing his income and property from the government's reach. Debtor admits that the sole purpose of doing these things was to avoid paying his federal income tax obligations.

The Debtor asserts, however, that his attempts to avoid paying his tax obligations do not cause the taxes to be nondischargeable under § 523(a)(1)(C) because, according to the Debtor, that section applies only to willful attempts in any manner to evade or defeat the *imposition or assessment* of tax, and does not apply to willful attempts in any manner to evade or defeat the *payment or collection* of tax. Since he asserts he cooperated (albeit tardily) with the IRS in *assessing and imposing the tax*, and he only transferred his interests to his wife in an effort to avoid *paying* the tax, he contends § 523(a)(1)(C) does not apply to him.

The United States disagrees with the Debtor's proposed interpretation of the statute and asserts that the Debtor's actions in filing his tax returns late, failing to pay his taxes when he had the income to do so, and transferring assets to his wife for the purposes of avoiding collection of the taxes, squarely falls within the plain language of § 523(a)(2)(C) in that the Debtor "willfully attempted in any manner

---

4. Since the Trustee apparently had abandoned this interest by the time the Debtor

sought to sell it, the proceeds would not have gone to the estate.

to evade or defeat" his federal income taxes.

While at least six circuit courts and numerous bankruptcy court have squarely addressed this issue, the Eighth Circuit has not yet done so at this point. Moreover, this is a matter of first impression before this Court. Relying on an Eleventh Circuit case strongly supporting his position, Debtor makes a rather convincing argument at first blush. Nevertheless, the overwhelming majority of the case law supports the United States' position, and after careful consideration, this Court believes that the majority rationale is the better one.

The leading case supporting the Debtor's position is the Eleventh Circuit's case, *In re Haas*, 48 F.3d 1153 (11th Cir.1995). The issue presented in *Haas* was:

> whether a debtor "willfully attempt[s] in any manner to evade or defeat [a] tax," for the purposes of 11 U.S.C. § 523(a)(1)(C), when the debtor intentionally fails to pay taxes for which he or she properly filed tax returns and acknowledged were owed to the Internal Revenue Service ("IRS").

*Id.* at 1153. In *Haas*, although the debtor accurately filed his tax returns for the years 1977 through 1985, he failed to pay his income or employment taxes for those years and admittedly used his income to pay his personal and business debts rather than paying his tax liability. *Id.* at 1154. The District Court had determined that this conduct constituted · tax evasion and therefore ruled that the taxes were nondischargeable under § 523(a)(1)(C). *Id.* at 1153. On appeal, the Eleventh Circuit disagreed with the District Court, concluding that Congress did not intend such a result, and therefore reversed. *Id.*

The government argued in *Haas*, as it does here, that the plain meaning of the phrase "willfully attempted in any manner to evade or defeat such tax," is sufficiently broad to include a debtor's "voluntary, conscious, ·and intentional" failure to pay taxes. *Id.* at 1155. Furthermore, the gov-

ernment argued that "if a debtor had both an awareness of his duty to pay his taxes and the present ability to pay them but nonetheless failed to satisfy that duty, then the tax liability is nondischargeable under section 523(a)(1)(C)." *Id.*

The Eleventh Circuit recognized that generally, the plain meaning of a. statute controls, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. *Id.* (citations omitted). The Court opined that the problem with the government's "plain meaning" interpretation of § 523(a)(1)(C) was that such a reading would effectively make all tax debts nondischargeable and that such an expansive reading would contravene the Bankruptcy Code's purpose of allowing a fresh start for the honest but unfortunate debtor. *Id.* at 1155–56. According to the Court, "[t]hat [the debtor] decided to use his limited funds to satisfy obligations other than his properly acknowledged income taxes does not render him a dishonest debtor, simply a debtor." *Id.* at 1156.

Furthermore, the *Haas* Court opined that the omission of the phrase "or the payment thereof" from § 523(a)(1)(C) in reference to "willfully attempted in any manner to evade or defeat such tax," in light of Congress' inclusion of those words on four previous occasions in the Internal Revenue Code, indicated that Congress did not intend that a failure to pay taxes, without more, should result in the nondischargeability of a debtor's tax liabilities in bankruptcy. *Id.* at 1157. As a result, the Eleventh Circuit concluded that Congress did not intend for a debtor's knowing failure to pay his taxes, without more, to constitute a willful attempt in any manner to evade or defeat such tax, such as would render the tax liability nondischargeable under § 523(a)(1)(C). *Id.* at 1158 ("we hold that a debtor's failure to pay his taxes, alone, does not fall within the scope

of section 523(a)(1)(C)'s exception to discharge in bankruptcy").

The Debtor in the case at bar relies on this rationale by the Eleventh Circuit and argues that since he cooperated with the government in the assessment and imposition of the taxes, and since his actions of filing late returns and transferring assets were designed merely to avoid payment of the taxes, under the *Haas* Court's rationale, he did not "willfully attempt[ ] in any manner to evade or defeat" his tax liabilities.

The majority of courts, however, have either rejected this reasoning or distinguished *Haas* on the facts, or both. Prior to *Haas*, the Sixth Circuit addressed the issue in *Toti v. United States (In re Toti)*, 24 F.3d 806 (6th Cir.1994), *cert. denied* 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994). In that case, the debtor failed to file federal income tax returns or pay federal income taxes, despite the fact he knew he was liable for the taxes and he had the wherewithal to pay his taxes during at least some of those years. *Id.* at 807. The debtor had been convicted and sentenced for willfully failing to file his 1976 income tax return. As part of the sentence, he paid his 1976 tax liability in full and filed all of his delinquent returns. He then stopped making payments on his federal tax liabilities for the subsequent years due to his inability to pay. *Id.*

The debtor in *Toti* argued that in order for § 523(a)(1)(C) to apply, the debtor must commit an affirmative act of evasion and that mere nonfiling of returns or nonpayment of taxes does not constitute a willful attempt to evade or defeat a tax. *Id.* at 808. The Sixth Circuit Court of Appeals disagreed and determined that "a plain reading of § 523(a)(1)(C) includes both acts of commission and acts of omission." *Id.* at 809. Recognizing that the purpose of the Bankruptcy Code is to allow the honest debtor a fresh start, the Court concluded that the debtor in this case did not fall within the category of honest debtors. *Id.* Because the debtor

had the wherewithal to file his return and pay his taxes, but he voluntarily, consciously, and intentionally failed to fulfill his obligation, the federal income tax liabilities were nondischargeable under § 523(a)(1)(C). *Id.*

The Fifth Circuit Court of Appeals addressed the issue in *Bruner v. United States (In re Bruner)*, 55 F.3d 195 (5th Cir.1995). In this case, the debtors failed to file their income tax returns for the years 1981 through 1988. An investigation by the IRS indicated that the debtors had substantial income for these years, but they failed to report the income or pay any taxes thereon. In 1988, the debtor-husband was indicted for willfully failing to file his income tax returns for the years 1981, 1982, and 1983. After pleading guilty to one of the counts in the indictment, the District Court ordered the debtor-husband to pay a $10,000 fine, pay back taxes, and file his returns for all the years through 1988. After the IRS reconstructed the debtors' income for the missing tax years, the total tax assessments totaled $290,000. Between 1989 and 1993, the debtors made substantial payments on their tax debts, but because of the overwhelming amount due, large sums remained owing when the debtors filed their bankruptcy petition in 1993. *See id.* at 196.

After discussing both *Toti* and *Haas*, the Fifth Circuit specifically disagreed with the Eleventh Circuit's decision in *Haas* that the language of the Bankruptcy Code must be interpreted in the same manner as that of the Internal Revenue Code. *Bruner* at 200. According to the Fifth Circuit, "Having carefully considered both *Toti* and *Haas*, we conclude that *Toti* expresses the preferable view. Section 523(a)(1)(C) surely encompasses both acts of commission as well as culpable omissions." *Id.*

Moreover, the Fifth Circuit held that the Bruners' actions in failing to file returns or pay taxes for eight years were more akin

to the facts in *Toti* than in *Haas*, in which the debtor had diligently filed his returns but simply used his income to pay personal and business debts rather than taxes. *Id.* In contrast, the Bruners had engaged in flagrant conduct aimed at avoiding even the imposition of a tax assessment against them and had engaged in a pattern of failing to report income, failing to file tax returns, and failing to pay taxes. *Id.* Furthermore, the Bruners had engaged in an inordinate number of cash transactions and had created a shell entity designed to conceal their income and assets. *Id.* As such, the Court found that "[t]he Bruners were engaged in both acts of omission and acts of commission, all designed to willfully evade the imposition of taxes against them." As a result, although it had already done so, the Court concluded that it was not even necessary for it to resolve the "affirmative act" argument forwarded by the debtors because they had in fact engaged in affirmative acts designed to evade their tax liabilities. *Id.* The Court held:

> A pattern of non-payment such as is present here, particularly when accompanied by a pattern of failure to file returns and coupled with conduct obviously aimed at concealing income and assets, certainly constitutes a willful attempt to evade or defeat taxes for purposes of § 523(a)(1)(C). Undoubtedly, the Bruners do not qualify as the sort of "honest debtor" the Bankruptcy Code is designed to protect.

*Id.*

In 1996, the Tenth Circuit addressed the issue in *Dalton v. I.R.S.*, 77 F.3d 1297 (10th Cir.1996). In that case, the debtor scheduled $13,668,866 in federal income tax liabilities for the tax years 1976 through 1978, 1981, and 1983 through 1985. He listed assets worth only $3,250. In discussing the Congressional intent behind the amendment of § 523(a), the Tenth Circuit said:

> Prior to 1966, tax debts were not dischargeable. In 1966, "consisten[t] with the rehabilitory purpose of the Bankruptcy Act," amendments were enacted "to make dischargeable in bankruptcy debts for taxes which became legally due and owing more than 3 years preceding bankruptcy and to limit the prior accorded to taxes." S.Rep. No. 1158, 89th Cong., 2d Sess. (1966), 1966 U.S.C.C.A.N. 2468, 2468, 2469. However, noting that "the purpose of this bill is to provide relief for the financially unfortunate and not to create a tax evasion device," Congress also pressed its intention to "specifically except[ ] from discharge taxes with respect to which [the debtor] had made a false or fraudulent return or which he had otherwise attempted to evade." *Id.* at 2470.

*Dalton*, 77 F.3d at 1300–01.

According to the Tenth Circuit, Congress enacted the equivalent of § 523(a)(1)(C) to make nondischargeable those taxes which the debtor "willfully attempted in any manner to evade or defeat" and although the terms are not statutorily defined, the language is unambiguous. *Id.* at 1302. Furthermore, the Tenth Circuit determined that this phrase has "well-known judicial interpretation in tax cases, which Congress presumably intended to adopt." *Id.* The Tenth Circuit further held that the contested language in § 523(a)(1)(C) is to be expansively defined. *Id.* (citing *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943)). Consequently, according to the Court, "the modifying phrase 'in any manner' is sufficiently broad to include willful attempts to evade taxes by concealing assets to protect them from execution or attachment." *Id.* (*quoting Jones v. United States (In re Jones)*, 116 B.R. 810, 814 (Bankr.D.Kan.1990)).

The Tenth Circuit agreed with the conclusion reached in *In re Jones*, 116 B.R. 810 (Bankr.D.Kan.1990), namely, that a contrary reading would effectively render the second exception of § 523(a)(1)(C) meaningless or superfluous because unless that provision encompasses willful at-

tempts to evade the payment or collection of taxes, then the only nondischargeable taxes under that section would be those resulting from fraudulent returns. *Id.* Finally, the Tenth Circuit said that given Congress' express purpose of relieving only the "honest" debtor from the debt of stale taxes, any statutory interpretation of "evade or defeat" which relieves the dishonest debtor who conceals assets to avoid the payment or collection of taxes, but which penalizes the same dishonesty to avoid assessment, would be an absurd result. *Id.*

The Tenth Circuit discussed the *Haas* Court's narrow application of § 523(a)(1)(C) and specifically agreed with the Eleventh Circuit's conclusion that a debtor's failure to pay his taxes, without more, does not fall within the scope of § 523(a)(1)(C). *Id.* (*quoting Haas,* 48 F.3d at 1158). Nevertheless, according to the Tenth Circuit, "nonpayment is relevant evidence which a court should consider in the totality of conduct to determine whether or not the debtor willfully attempted to evade or defeat taxes." *Id.*

In other words, the Tenth Circuit took an approach which, to some extent, reconciled *Haas* with the majority approach, namely, that mere failure to pay taxes, without more, will not render the debt nondischargeable under § 523(a)(1)(C), but if the debtor takes steps (such as transferring assets) to avoid collection of the tax, this may invoke § 523(a)(1)(C) nondischargeability.

In *In re Birkenstock,* 87 F.3d 947 (7th Cir.1996), the debtors were tax protestors who challenged the legitimacy of the monetary system and who failed to pay any of their taxes for several years. At one point during the pendency of litigation regarding their tax liability, the debtors created an equity trust and conveyed all of their property, including their lifetime incomes, to the trust which was transferred to their children for no consideration. *Id.* at 949. After the debtors were assessed deficiencies and penalties by the Tax Court for

their several years of misreporting and underpaying their taxes, they stopped filing their tax returns altogether. *Id.* As a result, a jury found the debtor-husband guilty of willful failure to file income tax returns for the years 1980 through 1983. *Id.* Ultimately, after several more problems with reporting and paying his taxes, the IRS levied the debtor-husband's social security payments. *Id.* at 950. According to the Court, the debtors never made a voluntary payment toward their liability for back taxes. *Id.*

After the debtors filed bankruptcy and the IRS commenced an adversary action seeking denial of discharge or nondischargeability of the tax obligation, the Bankruptcy Court determined that the debtors had not violated § 727(a)(4) and thus were entitled to a discharge, but ruled that the tax obligations were nondischargeable, finding that the debtors' entire history of conduct dating back to 1974 demonstrated "a continuing and unrelenting effort by the debtors to evade or defeat federal income taxes within the meaning of § 523(a)(1)(C)." *Id.*

On appeal, the Seventh Circuit affirmed. The Seventh Circuit relied upon *Dalton* and agreed that failure to pay a known tax duty is "relevant evidence which a court should consider in the totality of conduct to determine whether ... the debtor willfully attempted to evade or defeat taxes." *Id.* at 951 (*quoting Dalton,* 77 F.3d at 1301). According to the Court, "where nonpayment is coupled with a pattern of failing to file tax returns ... or where a defendant takes other measures to conceal assets or income from the IRS ..., a court may reasonably find that the debtor sought to 'evade or defeat' his tax liabilities." *Id.* at 951–952 (*citing Toti v. United States,* 24 F.3d 806 (6th Cir.1994); *Dalton,* 77 F.3d 1297; *In re Bruner,* 55 F.3d 195 (5th Cir.1995)).

Analogizing its case to the *Bruner* case, the Seventh Circuit held that the debtors' conduct, which included both a failure to

file returns and an attempt to conceal income from the IRS, went beyond merely not paying their taxes. *Id.* at 952. Furthermore, the Court held that the Bankruptcy Court below had been justified in determining that the debtors' attribution of their income to the trust and the debtor-husband's pattern of failing to file tax returns constituted attempts to evade or defeat their personal tax liabilities. *Id.*

The Third Circuit addressed the issue in *United States v. Fegeley (In re Fegeley),* 118 F.3d 979 (3rd Cir.1997). In that case, the Third Circuit addressed the "conduct requirement" of § 523(a)(1)(C) and reconciled the *Haas* decision with the majority as such:

> [I]t is evident that " 'Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation.' " *Dalton,* 77 F.3d at 1301 (*quoting Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943)). We must give weight to the fact that Congress included the phrase "in any manner" in the statute. Nonetheless, we should abide by the limitation set out by the Court of Appeals for the Eleventh Circuit in *In re Haas,* 48 F.3d 1153, 1158 (11th Cir.1995): "[A] debtor's failure to pay his taxes, alone, does not fall within the scope of section 523(a)(1)(C)'s exception to discharge in bankruptcy." *See also Dalton* 77 F.3d at 1301. Instead, we should look to nonpayment of taxes as "relevant evidence which [we] should consider in the totality of conduct to determine whether or not the debtor willfully attempted to evade or defeat taxes." *Id.*

*In re Fegeley,* 118 F.3d at 983. The Third Circuit then agreed with those courts that have held that § 523(a)(1)(C) encompasses acts of culpable omission as well as acts of commission and that affirmative conduct by a debtor designed to evade or defeat a tax is not required to render the debt nondischargeable. *Id.* (*citing In re Bruner,* 55 F.3d 195 (5th Cir.1995), *and In re Toti,* 24 F.3d 806 (6th Cir.1994)).

Thus, the Court concluded that the debtor's intentional failure to file his tax returns, together with his failure to pay taxes when he had the resources to do so, was sufficient to prove that he attempted to evade or defeat his tax liabilities for the tax years at issue. *Id.* at 984. Finally, because the debtor knew he had a duty to file his returns and pay his taxes and he had the financial ability to discharge that duty, he "willfully attempted to evade or defeat his taxes" and so they were properly found to be nondischargeable. *Id.*

Finally, the Sixth Circuit very recently revisited the issue in *Meyers v. Internal Revenue Service (In re Meyers),* 196 F.3d 622 (6th Cir.1999). In this case, the Sixth Circuit reaffirmed its prior holding in *Toti* that § 523(a)(1)(C) includes acts of omission as well as acts of commission. Furthermore, as the Debtor in the case at bar, the debtor in *Meyers* claimed that his failure to file returns and pay taxes for three years was not willful under § 523(a)(1)(C) because he later voluntarily went to the IRS and admitted liability and made some payments. *Id.* at 623. Also as the Debtor herein, Meyers relied on *Haas* and *Birkenstock* to support the proposition that his ultimate cooperation with the IRS in assessing the taxes nullified any earlier evasion of taxes. *Id.* at 624. The Sixth Circuit specifically rejected this argument and held that the debtor's willfulness was not nullified by later coming clean with the IRS. *Id.*[5]

The Debtor in the case at bar recognizes that the vast majority of case law supports

---

**5.** The Second Circuit was also recently presented with this issue in *Tudisco v. United States (In re Tudisco),* 183 F.3d 133 (2nd Cir.1999). However, the Second Circuit was not required to decide between *Haas* and the majority because the debtor in that case had engaged in more than "mere nonpayment," and so the Court concluded his conduct constituted an attempt to evade or defeat his taxes under either standard. *Id.* at 137.

the United States' position. Nevertheless, the Debtor asserts that the Eleventh Circuit's decision in *Haas* is correct and that the other courts deciding differently are simply wrong.

Unfortunately, the United States points out a rather significant development in the Eleventh Circuit. Namely, the Eleventh Circuit is currently revisiting this very issue and it appears possible that it may revise its position in *Haas.* Specifically, the Eleventh Circuit *en banc* has vacated a panel opinion issued in the case of *Griffith v. United States (In re Griffith),* 174 F.3d 1222 (11th Cir.1999), has heard oral argument, and is currently considering the case *en banc.* 182 F.3d 1297 (11th Cir.1999).

In *Griffith,* the debtor owed some $2,000,000 in underpaid income taxes relating to his adult entertainment businesses. Shortly after the tax court had issued its decision calculating the underpaid taxes, Griffith created a new corporation in which his long-time live-in girlfriend was the sole shareholder. A few months later, Griffith and his girlfriend married, at which time Griffith signed an antenuptial agreement transferring all of his interest in his adult entertainment enterprises, along with $390,000 in promissory notes, to the new wife and himself as tenants in the entirety. In addition, certain other assets were transferred to the new wife's corporation. *See id.* at 1223.

Shortly thereafter, the IRS made an assessment against Griffith. However, all of his assets were insulated from IRS levy because they were either held as tenants by the entirety with the new wife or had been transferred to her corporation outright. *See id.*

Some four years later, Griffith filed his Chapter 7 petition. The Bankruptcy Court below had concluded the tax debt was nondischargeable under § 523(a)(1)(C). However, the Eleventh Circuit's *Haas* decision was issued subsequent to the Bankruptcy Court's decision in *Griffith,* and so the debtor appealed the Bankruptcy Court's decision to the District Court, relying heavily on the intervening *Haas* decision. *Id.* at 1224. The District Court affirmed the Bankruptcy Court, distinguishing *Haas* on the fact that unlike the debtor in *Haas* who had been merely unable to pay his taxes because he used his income to pay other debts first, Griffith had engaged in a fraudulent transfer of assets in order to prevent collection of his tax debt. *Id.*

On further appeal to the Eleventh Circuit Court of Appeals, the circuit panel determined that this case was squarely governed by *Haas:*

> Pursuant to *Haas,* § 523(a)(1)(C) applies only to conduct constituting evasion of the assessment of a tax; it does not apply to conduct that involves evasion of the payment of a tax debt. Therefore, pursuant to the prior panel rule, we are compelled to reverse the decision of the district court and remand.

*Griffith* at 1225. Nevertheless, the panel went on to note that although it was bound by *Haas,* it was "troubled by its application in this case." *Id.* Specifically, the panel stated, "We have significant doubt about whether the *Haas* panel would have adopted its interpretation of § 523(a)(1)(C), had it foreseen the application of that interpretation in a case like this one." *Id.*

In this Court's view, the Eleventh Circuit panel in *Griffith* could not have been more clear in expressing its uncertainty with the *Haas* decision and its disapproval of its application under the circumstances in *Griffith.* The panel even went on to cite *Dalton* favorably, as well as to point out a particular flaw in the *Haas* decision: as the panel proposed *en banc* reconsideration in its opinion, it specifically suggested that "the *Haas* panel may have overemphasized the importance of the omission of the words 'or the payment thereof' from § 523(a)(1)(C)." *Id.* at 1226.

As mentioned above, the Eleventh Circuit Court of Appeals took the panel's suggestion in *Griffith* and granted rehear-

ing *en banc. In re Griffith,* 182 F.3d 1297. However, as of the date of this opinion, the Eleventh Circuit Court of Appeals has not yet issued its decision in that case.

■ In any event, after carefully considering Debtor's argument, this Court believes the better approach is the one taken in the majority of cases. Particularly, the Court agrees with the proposition that the mere nonpayment of taxes, without more, will not invoke § 523(a)(1)(C) nondischargeability; however, this Court believes that when a debtor is aware of his duty to pay his taxes, has the wherewithal to pay the taxes, and takes steps to avoid paying them, he has "willfully attempted to evade or defeat" the tax. This Court agrees with the proposition that any statutory interpretation which relieves the debtor who conceals assets to avoid the payment of collection of taxes, but which penalizes the same deed to avoid assessment of taxes, would be an absurd result. *See Dalton,* 77 F.3d at 1302.

■ Thus, as the United States urges, this Court must look at the totality of the circumstances to determine whether the Debtor in this case willfully attempted to evade or defeat his federal income taxes.

■ The Debtor acknowledges that he knew he had a legal obligation to file his federal income tax returns but did not do so for the years 1982 through 1987 because he knew he would owe money he could not pay and he feared the consequences once the taxes were assessed against him. He states his problem with paying his taxes were a result of his sporadic and unpredictable income and his poor business judgment and budgeting skills.

Regarding the manner in which his delinquent returns were ultimately filed, the Debtor states that in 1992, he retained an accountant for the purpose of preparing his delinquent tax returns, but that shortly after retaining the accountant, he received a notice from the IRS that they intended to conduct an audit pertaining to the unfiled years. The IRS auditor came to the Debtor's office in Denver and conducted the audit over a period of two or three weeks. The Debtor states he cooperated fully with the audit and produced all documents requested by the auditor. After the audit was complete and the IRS representative gave the Debtor his audit results, the Debtor expressed his disagreement with the calculation of income made by the auditor. However, after the representative told him that a modification of the numbers would require a second audit, the Debtor decided not to go through the process again and gave the auditor's calculations to his accountant who completed the returns. He still maintains that the income on those returns is overstated.

In addition to tardily filing his returns, the Court finds it significant that the Debtor has paid very little against his tax obligations voluntarily. Although the Debtor paid his 1995 tax obligation in full, that payment was basically the only voluntary payment he made against his taxes from 1982 through 1997. All other payments were made through levies or pursuant to the Installment Agreement. The Debtor even defaulted on the Installment Agreement after making only a few small payments thereunder.

Most significantly, after being notified that the IRS was no longer going to wait for the Debtor to pay his taxes voluntarily and it was going to levy his property, the Debtor transferred all of his income producing assets to his wife for no consideration. Although this was not done in secret so as to conceal the assets, it was done for the express purpose of avoiding the government's ability to recover them.

This Court finds that in contrast to the facts in *Haas,* the Debtor in this case not only committed acts of omission by failing to pay his taxes, he committed acts of commission to avoid paying them. In other words, this case does not involve a situation where the Debtor merely failed to pay his taxes; rather, he took steps to avoid having to pay his taxes. As a result,

the Court finds that the totality of circumstances lead to the conclusion that the debtor attempted to evade or defeat his federal income tax liabilities for purposes of § 523(a)(1)(C).

■ Finally, the Court concludes that the Debtor did this "willfully." "The mens rea requirement of § 523(a)(1)(C) mandates that the debtor's conduct be undertaken 'voluntarily, consciously or knowingly, and intentionally.'" *Tudisco v. United States (In re Tudisco)*, 183 F.3d 133, 137 (2nd Cir.1999) (*citing Dalton*, 77 F.3d at 1302; *Bruner*, 55 F.3d at 197; *Toti*, 24 F.3d at 809). The Debtor concedes he knew he was required to pay his taxes and that he took the actions he did to avoid paying them. As a result, the Court finds that the Debtor voluntarily, knowingly, and intentionally evaded his taxes.

### Conclusion

For the foregoing reasons, the Court finds in favor of the United States on the motion for summary judgment. The Debtor's debt to the United States relating to his federal income tax liabilities for the tax years 1982 through 1993, plus interest thereon, are excepted from discharge pursuant to § 523(a)(1)(C) of the Bankruptcy Code.