In re: Joseph A. MAY, Debtor.

Joseph A. May, Plaintiff,

v.

United States, Internal Revenue Service,

and

Missouri Department of Revenue, Defendants.

Bankruptcy No. 99–20822.
Adversary No. 99–2037.

United States Bankruptcy Court, W.D. Missouri.

May 1, 2000.

Joseph A. May, pro se debtor/plaintiff.

Jeffrey S. Swyers, for the United States, Internal Revenue Service.

Daniel A. West, Colorado Springs, CO, for the Missouri Department of Revenue.

Jack E. Brown, Chapter 7 Trustee.

## MEMORANDUM ORDER

FRANK W. KOGER, Chief Judge.

This matter is before the Court on cross-motions for summary judgment filed

by the debtor/plaintiff, Joseph A. May, and the defendant, United States, Internal Revenue Service. The only issue in dispute is whether May's federal income taxes and prepetition interest for tax years 1985 through 1993 are nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C) for the reason that May willfully attempted to evade or defeat the tax for those years.[1] The exhibits attached to the IRS's cross-motion for summary judgment overwhelmingly show that May did willfully attempt to evade or defeat the federal income tax for tax years 1985 through 1993. Accordingly, the Court will grant summary judgment in favor of the IRS on this issue and hold the federal income taxes and interest for tax years 1985 through 1993 to be nondischargeable in May's bankruptcy.[2] The Court will also sua sponte dismiss the Missouri Department of Revenue as a defendant in this action on the grounds of Eleventh Amendment sovereign immunity.

### Facts

On July 6, 1999, Joseph A. May filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. May listed the Internal Revenue Service as a creditor holding both secured and unsecured nonpriority claims for unpaid federal income taxes, penalties and interest, and listed the Missouri Department of Revenue as both a secured creditor and a creditor holding unsecured priority claims, in relevant part, for unpaid state income taxes. Neither the IRS nor the Missouri Department of Revenue filed a proof of claim in May's bankruptcy case. On November 8, 1999, May filed a pro se adversary complaint to

determine the dischargeability of his tax liability owed to the IRS for tax years 1985 through 1994, and the Missouri Department of Revenue for tax years 1985 through 1997. Both the IRS and the Missouri Department of Revenue timely filed answers to the complaint. On March 10, 2000, May filed his motion for partial summary judgment. The IRS responded with its cross-motion for summary judgment on March 27, 2000. Although May's motion for partial summary judgment was aimed in part at the state income taxes owed the Missouri Department of Revenue, the Missouri Department of Revenue declined to respond to the motion.

The parties do not dispute the material facts set forth in the IRS's cross-motion for summary judgment.[3] May holds a bachelor's degree in chemistry from the University of Arkansas, a D.D.S. from the University of Missouri at Kansas City, and completed two years of specialty training in endontics at the University of Minnesota. May is self-employed and currently practices dentistry/endontics in Jefferson City, Missouri.

Beginning with the 1979 tax year, May stopped filing federal income tax returns. According to May, in 1979, "after researching the law, [he] came to the conclusion that [he] was not a person liable under the Internal Revenue Code," and started questioning the authority of the IRS. May stated that he "came under the review of the Internal Revenue Service" as early as 1979, and at least as early as 1978 or 1979, May understood that the IRS disagreed

1. The parties agree that the fraud penalties and the interest on those fraud penalties for tax years 1985 through 1993 are dischargeable, and agree that the federal income taxes and interest for the 1994 tax year are dischargeable. Because the parties agree that the fraud penalties are dischargeable, the Court determines that May's assertion that the fraud penalties were incorrectly assessed against him is moot, and, accordingly, declines to address his arguments regarding same.

2. The Court determines that it is unnecessary to address the IRS's position that the federal income taxes for tax years 1987, 1988 and 1989 are also nondischargeable under 11 U.S.C. § 523(a)(1)(B)(i). In any event, the IRS did not brief this issue in its cross-motion for summary judgment.

3. In his Suggestions in Opposition to United States' Cross–Motion for Summary Judgment, May states that he does "not dispute the United States' statement of uncontroverted material facts as supported by the Government's Exhibits."

with his position. From about 1980 to 1983, on April 15, when people were trying to mail their income tax returns, May would go to the Post Office in Jefferson City, Missouri, and hold a flag and a sign "saying taxes are not fair or something to the fact that [there is] nothing in the IRS code that requires a person to file a tax return." May eventually stopped doing this because people "ignored" him.

During the tax years at issue, 1985 through 1993, May received the following income:

| Year | Income | Taxable Income |
|------|--------|----------------|
| 1985 | $ 92,427.00 | $32,922.00 |
| 1986 | 92,798.00 | 17,255.00 |
| 1987 | 96,324.00 | 16,354.00 |
| 1988 | 145,000.00 | 70,203.00 |
| 1989 | 160,039.00 | 59,408.00 |
| 1990 | 50,123.00 | 41,282.00 |
| 1991 | 34,785.00 | 26,777.00 |
| 1992 | 35,620.00 | 27,808.00 |
| 1993 | 22,743.00 | 9,561.00 |

In his adversary complaint May admits that he did not file federal income tax returns for tax years 1985 to 1993. During those tax years, May failed to report income tax liabilities of at least the following amounts:

| Year | Income Tax Liability (not including interest or penalties) [4] |
|------|-----------------------------|
| 1985 | $10,949.00 |
| 1986 | 4,665.00 |
| 1987 | 4,942.00 |
| 1988 | 24,548.00 |
| 1989 | 21,198.00 |
| 1990 | 16,111.00 |
| 1991 | 9,767.00 |
| 1992 | 10,497.00 |
| 1993 | 3,719.00 |

In February 1986, May received a letter from the IRS addressing his failure to file income tax returns for tax years 1979 through 1984. May responded to this letter by sending the IRS a document dated May 16, 1986, in which he claimed that he was a "non-taxpayer", that Forms 1040 and various sections of the Internal Revenue Code placed no imposition on him and that the IRS had no jurisdiction over him. In January 1987, May attempted to revoke his social security number.

In March of 1989, May was again contacted by the IRS regarding his failure to file income tax returns for the 1986 and 1987 tax years. May refused to provide the IRS with any documents or records for those years.

In 1980 or 1981, May "stopped banking" and started "closing bank accounts." To the best of his knowledge, from 1981 to 1994, May did not have a bank account in his own name. However, during the time period 1985 into 1994, May used at least four bank accounts in names other than his own. In 1988 into 1989, May used two bank accounts in the name of Old Hickory Enterprises. One account was at Blue Valley Federal Savings and Loan Association in Kansas City, Missouri, and the other was at Home Savings and Loan Association in Kansas City, Missouri. These two bank accounts were trust accounts in the name of Helen Chalender, who was May's secretary at the time. Pursuant to an oral agreement, Chalender allowed May to deposit checks into the accounts and she would then write checks to pay his bills. May had funds in both accounts.

May also used a bank account in the name of Basic Bible Church of America. May opened or established this account at the People's National Bank and Trust in Lewisburg, Kansas. According to May, he "donated funds" into this account, and would use the account to make charitable donations as he chose. May was the only person who placed funds in this account. May used this account from about 1984 or 1985 until February of 1994.

May also used a bank account in the name of Phoenix Futures at Farmers Bank of Lohman in Lohman, Missouri. May opened this account for the purpose of paying office bills. According to May, the account was a trust, owned by someone else, and "they" were paying the bills for him. May used this account from approximately 1989 or 1990 until sometime in

---

4. The total outstanding balance greatly exceeds the amount of the unpaid income taxes, however, in its cross-motion for summary judgment the IRS did not segregate the admittedly dischargeable penalties from the unpaid interest and income taxes in question.

1993 or 1994. May was the only person who put money into this bank account.

From roughly 1979 to 1993, May dealt primarily in cash, and paid most of his bills with cash, second party checks or money orders. May would pay bills directly with patient checks by signing them over to pay certain bills. When May received checks from patients that he did not use as second party checks to directly pay bills, he would take the patient checks to the banks on which they were drawn and cash them. May would either take cash, or convert the proceeds into money orders or cashier's checks. During 1987 or 1988, May would endorse the patient checks he cashed with a highlighter pen.

May's first marriage to Glenda Scoville occurred on April 1, 1975. During that marriage, on February 23, 1983, farm property located near Cleveland, Missouri consisting of about 78 to 80 acres with a home was purchased and titled in the name of Glenda Scoville. Scoville purchased the property with money she got from May, however, May's name was not put on the title to the property. At the time the farm property was purchased in 1983, May had failed to file income tax returns for several years, had written numerous letters to the IRS saying that he was not a person liable for income tax and had already been contacted by the IRS at least once for tax deficiencies. May lived on the farm property after its purchase. On December 20, 1983, only ten months after the farm property was purchased, May and Scoville were divorced. Pursuant to the divorce agreement, Scoville was given the entire interest in the farm property. Also pursuant to the 1983 divorce, Scoville was given all of May's dental chairs, x-ray equipment, office equipment and office furniture. However, May continued to use the dental equipment and office furnishings by leasing them back from Scoville. In the 1983 divorce, May got his dental practice and his gold and silver.

Following the divorce in 1983, May and Scoville lived separately for one to three months, after which May moved back onto the farm property to live with Scoville. After the 1983 divorce, May and Scoville still considered themselves to be husband and wife. Subsequently, May and Scoville had three more children together, who were born in 1985, 1988 and 1991. In 1985, May and Scoville were unofficially remarried in a church ceremony, but they were not remarried for the official record. In 1992, May and Scoville were officially remarried so that Scoville would not have to testify against May in a pending criminal tax case.

Also after the 1983 divorce, May continued to keep his personal property at the farm, including his game roosters, which he raised as a hobby; continued to keep gold and silver at and around the farm; made improvements to the farm property and did maintenance; and sporadically kept a one acre garden on the farm property until about 1989. In *Scoville v. United States*, 1999 WL 1424995 (W.D.Mo. Dec. 3, 1999), the District Court held that Glenda Scoville was the nominee of May with respect to the farm property.

May stored large amounts of cash in and around the farm property in Cleveland, Missouri, where "[o]nly [he] knew where it was" located. May also converted large amounts of cash into gold and silver, and stored same in different hiding places around the farm in buckets, in the barn and in the yard. By June of 1993, May had about $100,000.00 in gold and silver hidden at the farm.

During the years 1985 through 1994, May also had at least three automobiles titled in names other than his own. May bought a 1987 Nissan station wagon, and titled it in the name of Basic Bible Church. May drove this vehicle for two or three years, then got rid of it when it had about 200,000 miles on it. May also had a hearse titled in the name of Basic Bible Church. The hearse was destroyed in a fire sometime in April 1993, which also burnt down the house located on the Cleveland, Missouri farm property. May also had a 1988 Chevy Suburban that was titled in the

name of Basic Bible Church, which he purchased in 1991. May had control of the Suburban until June of 1994, when he and Scoville divorced for a second time. Scoville allegedly received the Suburban in their second divorce, however, May was driving the Suburban on the evening of February 24, 2000, the night before his deposition was taken in connection with this adversary proceeding.

In June of 1993, jeopardy levies were issued by the IRS on insurance proceeds disbursed in relation to the above-mentioned fire, which resulted in the payment of $152,774.22 to the United States. The IRS applied the funds received from the June 1993 levies to pay in full May's tax liabilities for tax years 1987, 1988 and 1989.[5] Other than the funds received from the levies, May made no payments for those tax years. Excluding the funds received from the levies, and credits applied from his Form 1040 for the 1994 and 1995 tax years, May has only made the following payments towards the subject tax liabilities:

| Tax Year | Payment | Date of Payment |
|---|---|---|
| 1985 | $ 500.00 | February 2, 1996 |
| 1986 | 4,000.00 | January 29, 1999 |
| 1990 | None | |
| 1991 | None | |
| 1992 | None | |
| 1993 | 500.00 | August 25, 1995 |
| 1993 | 500.00 | October 10, 1995 |
| 1993 | 500.00 | October 30, 1995 |
| 1993 | 500.00 | December 4, 1995 |
| 1993 | 500.00 | March 6, 1996 |
| 1993 | 500.00 | April 5, 1996 |
| 1993 | 500.00 | May 7, 1996 |
| 1993 | 200.00 | August 13, 1996 |

May was incarcerated from June 11, 1993, until January 26, 1994, in connection with a pending criminal tax case. On January 26, 1994, in criminal case number 4:92CR00193–1, in the United States District Court for the Western District of Missouri, May pled guilty to five willful failure to file income tax return counts under 26 U.S.C. § 7203 for tax years 1985, 1986, 1987, 1988 and 1989. The Judgment in that criminal case was dated and filed on February 1, 1994. At the time of the guilty plea and judgment in the criminal case, May had not filed tax returns for tax years 1979 through and including 1993. Pursuant to the Plea Agreement and the Judgment in the criminal case, May was ordered to file, not later than 180 days after his release from incarceration, "all outstanding U.S. Individual Income Tax Returns, Forms 1040, which are presently delinquent." The District Court also ordered May to "timely file all future income tax returns, Forms 1040." May was released from incarceration on January 26, 1994, the same date he entered into the Plea Agreement. Despite the Plea Agreement and the District Court's order, May did not timely file his tax return for 1993, which was due on April 15, 1994. The IRS prepared a substitute return for May for tax year 1993. In an attempt to comply with the District Court's order in his criminal case to file outstanding tax returns, on or about July 1, 1994, May signed and submitted to the IRS Forms 4549[6] for tax years 1985, 1986, 1990, 1991, 1992 and 1993. Additionally, on January 12, 1996, May submitted Forms 1040X to the IRS for tax years 1985 through 1992. The Form 1040X's for tax years 1985, 1986, 1990, 1991 and 1992 attach the Form 4549's for those tax years that May previously submitted on or about July 1, 1994. The Form 1040X's for tax years 1987, 1988 and 1989 merely attached unsigned copies of the IRS's statement of liability for those

5. These levies were the subject of a wrongful levy action brought against the United States by May's ex-wife, Glenda S. Scoville. *See Scoville v. United States,* 1999 WL 1424995 (W.D.Mo. Dec. 3, 1999). In that case, the District Court ordered the United States to return $46,648.22 of the levied funds. The United States has filed a notice of appeal. The IRS advises that the return of the levied funds should not affect the fully paid status of the 1987 tax liabilities, but it will affect the fully paid status for the 1988 and 1989 tax years.

6. A Form 4549 is an income tax examination changes report prepared entirely by the IRS. After the report is prepared, the taxpayer signs his consent to the assessment and collection of the liabilities indicated therein.

tax years, which are not signed Forms 4549. At the time May submitted the Forms 1040X for tax years 1985 through 1992, the IRS had already assessed the taxes for those years. The only reason May filed any back income tax returns was because the District Court in his criminal case ordered him to do so.

## Discussion

1. *Nondischargeability of federal income taxes and interest under 11 U.S.C. § 523(a)(1)(C)*

Summary judgment is proper whenever there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; Fed. R. Bankr.P. 7056. *See also Resolution Trust Corp. v. Armbruster*, 52 F.3d 748, 750 (8th Cir.1995). "The evidence must be viewed in the light most favorable to the party opposing the summary judgment motion." *In re Huffman*, 171 B.R. 649, 652 (Bankr.W.D.Mo.1994).

■ Here, the IRS bears the burden of proving nondischargeability under section 523 by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Section 523(a)(1)(C) of the Bankruptcy Code provides in relevant part that a bankruptcy discharge does not discharge an individual debtor from any debt "with respect to which the debtor . . . willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). Recently, in *United States v. Carnes (In re Carnes)*, 244 B.R. 435 (Bankr.W.D.Mo. 2000), this Court was presented with the opportunity to thoroughly examine the meaning of section 523(a)(1)(C), in order to determine what debtor actions or inactions constitute a willful attempt to evade or defeat income tax so as to invoke nondis-

chargeability of the tax debt. After discussing several Circuit Court opinions [7] that had previously addressed the issue, the Court opined:

> [T]his Court believes the better approach is the one taken in the majority of cases. Particularly, the Court agrees with the proposition that the mere nonpayment of taxes, without more, will not invoke § 523(a)(1)(C) nondischargeability; however, this-Court believes that when a debtor is aware of his duty to pay his taxes, has the wherewithal to pay the taxes, and takes steps to avoid paying them, he has "willfully attempted to evade or defeat" the tax. This Court agrees with the proposition that any statutory interpretation which relieves the debtor who conceals assets to avoid the payment o[r] collection of taxes, but which penalizes the same deed to avoid assessment of taxes, would be an absurd result. . . .

> [T]his Court must look at the totality of the circumstances to determine whether the Debtor in this case willfully attempted to evade or defeat his federal income taxes.

> . . . .

> "The mens rea requirement of § 523(a)(1)(C) mandates that the debtor's conduct be undertaken 'voluntarily, consciously or knowingly, and intentionally.'" . . .

*Carnes*, 244 B.R. at 447–48 (citations omitted). *See also Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1396 (11th Cir.2000)(en banc)("The willful attempt to evade prong of 523(a)(1)(C) includes 'both a conduct requirement (that the debtor sought "in any manner to evade or defeat" his tax liability) and a mental state re-

---

7. To follow up on the initial discussion in *Carnes*, on March 24, 2000, the Eleventh Circuit Court of Appeals filed its en banc opinion in *Griffith v. United States (In re Griffith)*, 206 F.3d 1389 (11th Cir.2000)(en banc). In *Griffith*, the Eleventh Circuit ruled that under section 523(a)(1)(C) the mere nonpayment of taxes is insufficient to establish nondischarge-

ability, however, tax debts are nondischargeable in bankruptcy when the debtor has engaged in affirmative acts which show a willful attempt to evade or defeat the payment of the tax, even if the debtor has not in any manner willfully attempted to evade or defeat the assessment of the tax, abrogating *In re Haas*, 48 F.3d 1153 (11th Cir.1995).

quirement (that the debtor did so "willfully").' ") (citations omitted).

Whether May intended to evade his tax obligations for the tax years 1985 through 1993 is a question of fact to be determined from the totality of the record. *See Teeslink v. United States (In re Teeslink)*, 165 B.R. 708, 716 (Bankr.S.D.Ga. 1994). Because direct proof of such intent is normally unavailable, same is usually proven by circumstantial evidence. *Id.* Fact patterns evidencing an intent to evade tax obligations include "significant understatements of income made repeatedly; failure to file tax returns; repeatedly filing returns late; implausible or inconsistent behavior by the taxpayer; and failure to cooperate with federal tax authorities." *Id.* (citation omitted). "Concealment of assets, dealing in cash, shielding income and otherwise frustrating IRS collection efforts are also indications of willful attempts to evade a tax." *Id.* (citation omitted). *See also Bradford v. Commissioner of Internal Revenue*, 796 F.2d 303, 307–08 (9th Cir. 1986).

In *Dalton v. Internal Revenue Service*, 77 F.3d 1297, 1301 (10th Cir.1996) (citation omitted), the Tenth Circuit opined:

> By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.

In sum, "§ 523(a)(1)(C) encompasses the various schemes, including concealment, by which tax evasion may be accomplished." *Dalton*, 77 F.3d at 1302. *See also In re Birkenstock*, 87 F.3d 947, 951–52 (7th Cir.1996); *Bruner v. United States (In re Bruner)*, 55 F.3d 195, 200 (5th Cir.1995). In *Bruner* the Fifth Circuit stated that "[a] pattern of non-payment such as is present here, particularly when accompanied by a pattern of failure to file returns and coupled with conduct obviously aimed at concealing income and assets, certainly constitutes a willful attempt to evade or defeat taxes for purposes of § 523(a)(1)(C)." *Bruner*, 55 F.3d at 200.

In this case, there is more than ample evidence which shows that May willfully attempted to evade or defeat his federal income taxes during the tax years 1985 to 1993 within the meaning of section 523(a)(1)(C). Clearly, May was aware of his duty to pay taxes as shown by the fact that he filed federal income tax returns until tax year 1979. The documentation attached to the IRS's cross-motion for summary judgment shows that May had the wherewithal to pay his taxes for the tax years in question. Finally, May clearly took steps to evade paying his federal income taxes, and the Court finds he did so "voluntarily, consciously or knowingly, and intentionally." For example, May failed to file income tax returns for tax years 1979 to 1993; he was convicted in the United States District Court for the Western District of Missouri on five counts of willful failure to file income tax returns for tax years 1985 through 1989; he engaged in elaborate schemes to conceal his income and assets during the tax years in question, including a sham divorce in 1983 from his wife, Glenda Scoville, and dealing in cash; he failed to cooperate with the IRS and insisted on numerous occasions that he was not a person who was liable under the Internal Revenue Code; and he attempted to revoke his social security number. Under the totality of the circumstances, this Court is more than satisfied that May's tax liabilities for the tax years 1985 to 1993 are nondischargeable debts pursuant to section 523(a)(1)(C) of the Bankruptcy Code.

It is well-established that prepetition interest associated with an underlying tax debt that is nondischargeable under section 523(a)(1)(C) is also nondischarge-

able. *See Simmons v. United States (In re Simmons)*, 227 B.R. 338, 341 (Bankr. N.D.Ga.1998); *Gambone v. Ohio Dep't of Taxation (In re Gambone)*, 224 B.R. 611, 612 n. 2 (Bankr.N.D.Ohio 1998); *Pierce v. United States (In re Pierce)*, 184 B.R. 338, 344 (Bankr.N.D.Iowa 1995); *Halburg v. United States (In re Halburg)*, 177 B.R. 101, 104 (Bankr.N.D.Ala.1995); *Leahey v. United States (In re Leahey)*, 169 B.R. 96, 99 (Bankr.D.N.J.1994).

The Court determines that Joseph A. May's debt to the United States, Internal Revenue Service for his federal income tax obligations for tax years 1985 to 1993, including interest thereon, is nondischargeable under 11 U.S.C. § 523(a)(1)(C), and will grant summary judgment in favor of the United States, Internal Revenue Service on this issue.

### 2. Dismissal of the Missouri Department of Revenue as a defendant

■ This Court raises the issue of the Missouri Department of Revenue's Eleventh Amendment sovereign immunity sua sponte. *See California Franchise Tax Board v. Jackson (In re Jackson)*, 184 F.3d 1046, 1048 (9th Cir.1999)(court must resolve Eleventh Amendment sovereign immunity issue before reaching merits of the case, and may raise issue sua sponte); *In re Raphael*, 230 B.R. 657, 665 (Bankr. D.N.J.1999), *rev'd on other grounds*, 238 B.R. 69 (D.N.J.1999)("[S]overeign immunity issue should be raised sua sponte where it impacts upon the court's jurisdiction."). "Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court sua sponte." *Jackson*, 184 F.3d at 1048.

■ In *Rose v. United States Dep't of Education (In re Rose)*, 187 F.3d 926, 928–29 (8th Cir.1999), the Eighth Circuit Court of Appeals opined that the Eleventh Amendment bars federal actions by private parties against a state or state entity unless the state has waived its sovereign immunity or Congress has abrogated the

state's sovereign immunity by a valid exercise of power under the enforcement clause of the Fourteenth Amendment. Because 11 U.S.C. § 106(b) amounts to an unconstitutional attempt by Congress to abrogate the sovereign immunity of states, a state or state entity waives its sovereign immunity only when it has unequivocally expressed its consent to federal jurisdiction. *See Jackson*, 184 F.3d at 1049. A state or state entity waives sovereign immunity by filing a proof of claim in the debtor's bankruptcy case. *See Rose*, 187 F.3d at 929; *Jackson*, 184 F.3d at 1049.

■ Here, the Missouri Department of Revenue has not filed a proof of claim in May's bankruptcy case, nor has it taken any other steps by which it may be deemed to have waived its Eleventh Amendment sovereign immunity. Accordingly, the Court determines that the Missouri Department of Revenue should be dismissed as a defendant in this adversary proceeding.

### Conclusion

Based on the above discussion, the Court GRANTS summary judgment in favor of the United States, Internal Revenue Service. Joseph A. May's debt to the United States, Internal Revenue Service for his federal income tax obligations for tax years 1985 to 1993, including interest thereon, is nondischargeable under 11 U.S.C. § 523(a)(1)(C). The Missouri Department of Revenue is DISMISSED as a defendant in this adversary proceeding.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.